# EXHIBIT C

Execution Version

# Collateral Agreement

### dated as of
### September 17, 2018

### among

### MTE Holdings LLC,
### as Grantor

### and

### Riverstone Credit Management, LLC,
### as Administrative Agent

# TABLE OF CONTENTS

**ARTICLE I Definitions** ...................................................................................................1
    Section 1.01    Definitions...................................................................................1
    Section 1.02    Other Definitional Provisions; References ...................................2

**ARTICLE II Grant of Security Interest** .......................................................................3
    Section 2.01    Grant of Security Interest............................................................3
    Section 2.02    Transfer of Pledged Securities....................................................4
    Section 2.03    Grantor Remains Liable under Accounts, Chattel Paper and Payment Intangibles....................................................................4

**ARTICLE III Acknowledgments, Waivers and Consents** ...........................................5
    Section 3.01    Acknowledgments, Waivers and Consents...................................5
    Section 3.02    No Subrogation, Contribution or Reimbursement ........................7

**ARTICLE IV Representations and Warranties** ...........................................................7
    Section 4.01    Representations in Credit Agreement ...........................................7
    Section 4.02    Perfected Liens............................................................................7
    Section 4.03    Legal Name, Organizational Status, Chief Executive Office .........7
    Section 4.04    Prior Names, Addresses ..............................................................8
    Section 4.05    Pledged Securities ......................................................................8
    Section 4.06    Instruments and Chattel Paper ...................................................8
    Section 4.07    Accounts ....................................................................................8
    Section 4.08    Governmental Obligors ..............................................................9
    Section 4.09    Tangible Assets ..........................................................................9
    Section 4.10    Commercial Tort Claims .............................................................9

**ARTICLE V Covenants** ................................................................................................9
    Section 5.01    Covenants in Credit Agreement ..................................................9
    Section 5.02    Maintenance of Perfected Security Interest; Further Documentation............9
    Section 5.03    Maintenance of Records .............................................................10
    Section 5.04    Further Identification of Collateral .............................................10
    Section 5.05    Pledged Securities .....................................................................10
    Section 5.06    Instruments and Tangible Chattel Paper .....................................11
    Section 5.07    Commercial Tort Claims ............................................................11

**ARTICLE VI Remedial Provisions** ..............................................................................12
    Section 6.01    Pledged Securities .....................................................................12
    Section 6.02    Collections on Accounts, Etc .....................................................13
    Section 6.03    Proceeds ...................................................................................13
    Section 6.04    Remedies ..................................................................................14
    Section 6.05    Private Sales of Pledged Securities..............................................14
    Section 6.06    Deficiency .................................................................................15
    Section 6.07    Non-Judicial Enforcement .........................................................15

**ARTICLE VII The Administrative Agent** .....................................................................15
    Section 7.01    Administrative Agent's Appointment as Attorney-in-Fact, Etc ...................15
    Section 7.02    Duty of Administrative Agent ....................................................16
    Section 7.03    Financing Statements .................................................................17

Section 7.04  Authority of Administrative Agent ................................................................17

**ARTICLE VIII Miscellaneous**................................................................................................**18**
Section 8.01  Waiver................................................................................................18
Section 8.02  Notices ..............................................................................................18
Section 8.03  Payment of Expenses, Indemnities, Etc ..........................................18
Section 8.04  Amendments in Writing; Conflicts...................................................19
Section 8.05  Successors and Assigns.....................................................................19
Section 8.06  Invalidity ...........................................................................................19
Section 8.07  Counterparts ......................................................................................19
Section 8.08  Survival .............................................................................................19
Section 8.09  Captions ............................................................................................19
Section 8.10  No Oral Agreements .........................................................................19
Section 8.11  Governing Law; Submission to Jurisdiction....................................19
Section 8.12  Acknowledgments.............................................................................20
Section 8.13  Set-Off...............................................................................................21
Section 8.14  Releases.............................................................................................21
Section 8.15  Reinstatement....................................................................................22
Section 8.16  Acceptance........................................................................................22
Section 8.17  Administrative Agent........................................................................22

SCHEDULES:

1.  Notice Address of Grantor
2.  Description of Pledged Securities
3.  Filings and Other Actions Required to Perfect Security Interests
4.  Legal Name, Location of Jurisdiction of Organization, Organizational Identification Number, Taxpayor Identification Number and Chief Executive Office
5.  Prior Names, Prior Chief Executive Office, Location of Tangible Assets
6.  Commercial Tort Claims

This **COLLATERAL AGREEMENT** (as amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), dated as of September 17, 2018, is made by MTE Holdings LLC, a Delaware limited liability company (the "**Grantor**"), in favor of Riverstone Credit Management, LLC, as administrative agent and collateral agent for the Lenders (as defined below) from time to time parties to the Term Loan Credit Agreement (as defined below) (together with its successors in such capacity, the "**Administrative Agent**").

**R E C I T A L S**

A.       Grantor is party to that certain Term Loan Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**") dated as of even date herewith, among the Grantor, the lenders from time to time party thereto (the "**Lenders**") and the Administrative Agent.

B.       It is a condition precedent to the obligation of the Lenders to make the Loans (as defined in the Credit Agreement) that the Grantor shall have executed and delivered this Agreement to the Administrative Agent for the ratable benefit of the Lenders.

C.       Now, therefore, in consideration of the premises herein and to induce the Administrative Agent and the Lenders to enter into the Credit Agreement and to induce the Lenders to make the Loans thereunder, the Grantor hereby agrees with the Administrative Agent, for the ratable benefit of the Lenders, as follows:

**ARTICLE I**
**Definitions**

Section 1.01       <u>Definitions</u>.

(a)       As used in this Agreement, each term defined above shall have the meaning indicated above.  Unless otherwise defined herein, capitalized terms used in this Agreement shall have the meanings given to them in the Credit Agreement, and the following terms as well as all uncapitalized terms which are defined in the UCC on the date hereof are used herein as so defined:  Accounts, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Fixtures, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Payment Intangibles, Proceeds, Supporting Obligations, and Tangible Chattel Paper.

(b)       The following terms shall have the following meanings:

"**Account Debtor**" shall mean a Person (other than the Grantor) obligated on an Account, Chattel Paper, or General Intangible.

"**Agreement**" shall have the meaning assigned such term in the preamble hereto.

"**Collateral**" shall have the meaning assigned such term in <u>Section 2.01</u>.

"**Commodity Exchange Act**" means the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute, and any regulations promulgated thereunder.

"**Credit Agreement**" shall have the meaning assigned such term in the recitals hereto.

"**Excluded Property**" shall have the meaning assigned to such term in <u>Section 2.01</u>.

"**Grantor**" shall have the meaning assigned such term in the preamble hereto.

"**Investment Property**" means the collective reference to (i) all "investment property" as such term is defined in Section 9-102(a)(49) of the UCC and (ii) whether or not constituting "investment property" as so defined, all Pledged Notes and all Pledged Securities.

"**Lenders**" shall have the meaning assigned such term in the recitals hereto.

"**Pledged Entity**" means any issuer of a Pledged Security.

"**Pledged Notes**" means all promissory notes, if any, listed on Schedule 2, all intercompany notes at any time issued to the Grantor and all other promissory notes issued to or held by the Grantor (other than promissory notes issued in connection with extensions of trade credit by the Grantor in the ordinary course of business).

"**Pledged Securities**" means: (a) the Capital Stock described or referred to in Schedule 2 (as the same may be supplemented from time to time pursuant to a Supplement); and (b) (i) the certificates or instruments, if any, representing such Capital Stock, (ii) all dividends (cash, Capital Stock or otherwise), cash, instruments, rights to subscribe, purchase or sell and all other rights and Property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such Capital Stock, (iii) all replacements, additions to and substitutions for any of the Property referred to in this definition, including, without limitation, claims against third parties, (iv) all other Collateral constituting Capital Stock, (v) the Proceeds, interest, profits and other income of or on any of the Property referred to in this definition, (vi) all security entitlements in respect of any of the foregoing, if any, and (vii) all books and records relating to any of the Property referred to in this definition; provided that the term "Pledged Securities" shall not include any Excluded Property.

"**Secured Documents**" means the collective reference to the Credit Agreement and the other Loan Documents.

"**Security Termination**" means such time as when each of the following shall have occurred: (i) the Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted at such time) and (ii) the Loans and all commitments under the Credit Agreement have been terminated. For purposes of clarification, "Security Termination" shall have occurred for purposes of this Agreement if the two events provided in clauses (i)-(ii) above have occurred.

"**UCC**" means the Uniform Commercial Code of the State of New York.

Section 1.02    Other Definitional Provisions; References.  The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.  The gender of all words shall include the masculine, feminine, and neuter, as appropriate.  The words "herein," "hereof," "hereunder" and other words of similar import when used in this Agreement refer to this Agreement as a whole, and not to any particular article, section or subsection.  Any reference herein to a Section shall be deemed to refer to the applicable Section of this Agreement unless otherwise stated herein.  Any reference herein to an exhibit, schedule or annex shall be deemed to refer to the applicable exhibit, schedule or annex attached hereto unless otherwise stated herein.  Where the context requires, terms relating to the Collateral or any part thereof, when used in relation to the Grantor, shall refer to the Grantor's Collateral or the relevant part thereof.

- 2 -

## ARTICLE II
## Grant of Security Interest

Section 2.01 <u>Grant of Security Interest.</u> The Grantor hereby pledges, assigns and transfers to the Administrative Agent, and grants to the Administrative Agent, for the ratable benefit of the Secured Parties, a security interest in all of the following property now owned or at any time hereafter acquired by the Grantor or in which the Grantor now has or at any time in the future may acquire any right, title or interest and whether now existing or hereafter coming into existence (collectively, the "**Collateral**"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations:

(1) all Accounts;

(2) all Chattel Paper (whether Tangible Chattel Paper or Electronic Chattel Paper);

(3) all Commercial Tort Claims set forth on <u>Schedule 6</u>;

(4) all Deposit Accounts other than payroll, withholding tax and other fiduciary Deposit Accounts;

(5) all cash;

(6) all Documents;

(7) all General Intangibles (including, without limitation, rights in and under any Swap Agreements);

(8) all Goods (including, without limitation, all Inventory and all Equipment);

(9) all Instruments;

(10) all Investment Property;

(11) all Letter-of-Credit Rights (whether or not the letter of credit is evidenced by a writing);

(12) all Pledged Securities;

(13) all Supporting Obligations;

(14) all books and records pertaining to the Collateral;

(15) all other personal property of the Grantor, whether tangible or intangible and wherever located; and

(16) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security, guarantees and other Supporting Obligations given with respect to any of the foregoing.

Notwithstanding the foregoing, this <u>Section 2.01</u> does not grant a security interest in (a) any lease, license or other agreement or contract or any property subject to a purchase money security interest, Lien securing a Capital Lease Obligation or similar arrangement, in each case permitted to be incurred under the

- 3 -

Credit Agreement, to the extent that a grant of a security interest therein would require a consent not obtained or violate or invalidate such lease, license or agreement or contract or purchase money arrangement, Capital Lease Obligation or similar arrangement or create a right of termination in favor of any other party thereto (other than the Grantor), in each case after giving effect to the applicable anti-assignment provisions of the UCC and other applicable law and other than Proceeds and receivables thereof, the assignment of which is expressly deemed effective under the UCC or other applicable law notwithstanding such prohibition; (b) motor vehicles and other assets subject to certificates of title (other than to the extent a Lien thereon can be perfected by the filing of a financing statement under the UCC); (c) those assets as to which the Administrative Agent shall determine, in writing, that the cost or other consequence of obtaining a Lien thereon or perfection thereof are excessive in relation to the benefit to the Secured Parties of the security to be afforded thereby (d) any property to the extent that such grant is prohibited by reason of applicable laws, rules, regulations, or ordinances or by any agreement relating to such property, except to the extent that such prohibition is rendered ineffective by Sections 9-406, 9-407, 9-408 or 9-409 of the UCC, is no longer in effect or causes a violation of the Credit Agreement; (e) any application to register any trademark, service mark or other mark prior to the filing under applicable law of a verified statement of use (or the equivalent) for such trademark to the extent the creation of a security interest therein or the grant of a Lien thereon would void or invalidate such trademark; provided that the security interest provided herein in such trademark shall be deemed granted by the Grantor at such time as a verified statement of use (or the equivalent) is filed under applicable law with respect to such trademark and will attach immediately without further action; or (f) the Capital Stock owned by the Grantor in (i) any Subsidiary of the Grantor that is a "controlled foreign corporation" under Section 956 of the Internal Revenue Code (a "**Foreign Subsidiary**") (1) that represents in excess of 65% of the outstanding voting stock of such Foreign Subsidiary or (2) that is not a "First Tier" Foreign Subsidiary owned by the Grantor, (ii) any domestic Subsidiary that is a Subsidiary of a Foreign Subsidiary, and (iii) any direct or indirect domestic Subsidiary of the Grantor that is treated as a disregarded entity for federal income tax purposes and substantially all of the assets of which include the capital stock or other equity interests of one or more Foreign Subsidiaries (collectively, "**Excluded Property**"). Excluded Property shall not be included as "Collateral" for purposes of this Agreement.

Section 2.02    Transfer of Pledged Securities.  All certificates and instruments representing or evidencing the Pledged Securities shall be delivered to and held pursuant hereto by the Administrative Agent or a Person designated by the Administrative Agent and, in the case of an instrument or certificate in registered form, shall be duly indorsed to the Administrative Agent or in blank by an effective indorsement (whether on the certificate or instrument or on a separate writing), and accompanied by any required transfer tax stamps to effect the pledge of the Pledged Securities to the Administrative Agent. Notwithstanding the preceding sentence, all Pledged Securities must be delivered or transferred in such manner, and the Grantor shall take all such further action as may be requested by the Administrative Agent, as to permit the Administrative Agent to be a "protected purchaser" to the extent of its security interest as provided in Section 8-303 of the UCC (if the Administrative Agent otherwise qualifies as a protected purchaser).

Section 2.03    Grantor Remains Liable under Accounts, Chattel Paper and Payment Intangibles. Anything herein to the contrary notwithstanding, the Grantor shall remain liable under each of the Accounts, Chattel Paper and Payment Intangibles to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with the terms of any agreement giving rise to each such Account, Chattel Paper or Payment Intangible.  Neither the Administrative Agent nor any other Secured Party shall have any obligation or liability under any Account, Chattel Paper or Payment Intangible (or any agreement giving rise thereto) by reason of or arising out of this Agreement or the receipt by the Administrative Agent or any such other Secured Party of any payment relating to such Account, Chattel Paper or Payment Intangible pursuant hereto, nor shall the Administrative Agent or any other Secured Party be obligated in any manner to perform any of the obligations of the Grantor under or pursuant to any

Account, Chattel Paper or Payment Intangible (or any agreement giving rise thereto), to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any Account, Chattel Paper or Payment Intangible (or any agreement giving rise thereto), to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

### ARTICLE III
### Acknowledgments, Waivers and Consents

Section 3.01    Acknowledgments, Waivers and Consents.

(a)    The Grantor acknowledges and agrees that the obligations undertaken by it under this Agreement may involve the provision of collateral security for the obligations of Persons other than the Grantor and that the Grantor's provision of collateral security for the Obligations is absolute, irrevocable and unconditional under any and all circumstances.  In full recognition and furtherance of the foregoing, the Grantor understands and agrees, to the fullest extent permitted under applicable law and except as may otherwise be expressly and specifically provided in the Credit Agreement or any other Loan Document, that the Grantor shall remain obligated hereunder (including, without limitation, with respect to the collateral security provided by the Grantor herein) and the enforceability and effectiveness of this Agreement and the liability of the Grantor, and the rights, remedies, powers and privileges of the Administrative Agent and the other Secured Parties under this Agreement and the other Loan Documents shall not be affected, limited, reduced, discharged or terminated in any way:

(i)    notwithstanding that, without any reservation of rights against the Grantor and without notice (except as required by applicable law) to or further assent by the Grantor, (A) any demand for payment of any of the Obligations made by the Administrative Agent may be rescinded by the Administrative Agent, and any of the Obligations continued; (B) the Obligations, the liability of any other Person upon or for any part thereof or any collateral security or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by, or any indulgence or forbearance in respect thereof granted by, the Administrative Agent; (C) the Credit Agreement, the other Loan Documents and any other documents executed and delivered in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, in accordance with the terms thereof, as the Administrative Agent (or the Requisite Lenders, or all Lenders, as the case may be), and the Grantor, as applicable, may deem advisable from time to time; (D) the Grantor or any other Person may from time to time accept or enter into new or additional agreements, security documents, guarantees or other instruments in addition to, in exchange for or relative to, any Loan Document, all or any part of the Obligations or any Collateral now or in the future serving as security for the Obligations, in each case pursuant to the terms and conditions thereof; (E) any collateral security or right of offset at any time held by the Administrative Agent or any other Secured Party for the payment of the Obligations may be sold, exchanged, waived, surrendered or released; and (F) any other event shall occur which constitutes a defense or release of sureties generally; and

(ii)    without regard to, and the Grantor hereby expressly waives to the fullest extent permitted by law, any defense now or in the future arising by reason of, (A) the illegality, invalidity or unenforceability against the Grantor of the Credit Agreement, any other Loan Document, any of the Obligations or any other collateral security therefor or right of offset with respect thereto at any time or from time to time held by the Administrative Agent or any other Secured Party, (B) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by any other Grantor or any other Person against the Administrative Agent or any other Secured Party, (C) the insolvency, bankruptcy arrangement, reorganization, adjustment, composition, liquidation,

disability, dissolution or lack of power of any other Grantor or any other Person at any time liable for the payment of all or part of the Obligations or the failure of the Administrative Agent or any other Secured Party to file or enforce a claim in bankruptcy or other proceeding with respect to any Person; or any sale, lease or transfer of any or all of the assets of the Grantor, or any changes in the shareholders of the Grantor; (D) the fact that any Collateral or Lien contemplated or intended to be given, created or granted as security for the repayment of the Obligations shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other Lien, it being recognized and agreed by the Grantor that it is not entering into this Agreement in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the Collateral for the Obligations; (E) any failure of the Administrative Agent or any other Secured Party to marshal assets in favor of the Grantor or any other Person, to exhaust any collateral for all or any part of the Obligations, to pursue or exhaust any right, remedy, power or privilege it may have against the Grantor or any other Person or to take any action whatsoever to mitigate or reduce the Grantor's liability under this Agreement, any other Loan Document; (F) any law which provides that the obligation of a surety or guarantor must neither be larger in amount nor in other respects more burdensome than that of the principal or which reduces a surety's or guarantor's obligation in proportion to the principal obligation; (G) the possibility that the Obligations may at any time and from time to time exceed the aggregate liability of the Grantor under this Agreement; or (H) any other circumstance or act whatsoever, including any action or omission of the type described in this Section 3.01 (with or without notice to or knowledge of the Grantor), which constitutes, or might be construed to constitute, an equitable or legal discharge or defense of the Grantor for the Obligations, or with respect to the collateral security provided by the Grantor herein, or which might be available to a surety or guarantor, in bankruptcy or in any other instance.

(b)     The Grantor hereby waives to the extent permitted by law:  (i) except as expressly provided otherwise in any Loan Document, all notices to the Grantor, or to any other Person, including but not limited to, notices of the acceptance of this Agreement or the provision of collateral security provided herein, or the creation, renewal, extension, modification, accrual of any Obligations, or notice of or proof of reliance by the Administrative Agent or any other Secured Party upon the collateral security provided herein, or of default in the payment or performance of any of the Obligations owed to the Administrative Agent or any other Secured Party and enforcement of any right or remedy with respect thereto; or notice of any other matters relating thereto; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred, or renewed, extended, amended or waived, in reliance upon the collateral security provided herein and no notice of creation of the Obligations already or hereafter contracted by the Grantor need be given to the Grantor; and all dealings between the Grantor, on the one hand, and the Administrative Agent and the other Secured Parties, on the other hand, likewise shall be conclusively presumed to have been had or consummated in reliance upon the collateral security provided herein; (ii) diligence and demand of payment, presentment, protest, dishonor and notice of dishonor; (iii) all rights of revocation with respect to the Obligations and the provision of collateral security herein; and (iv) all principles or provisions of law which conflict with the terms of this Agreement and which can, as a matter of law, be waived.

(c)     When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against the Grantor, the Administrative Agent or any other Secured Party may, but shall be under no obligation to, join or make a similar demand on or otherwise pursue or exhaust such rights and remedies as it may have against the Grantor or any other Person or against any collateral security or any right of offset with respect thereto, and any failure by the Administrative Agent or any other Secured Party to make any such demand, to pursue such other rights or remedies or to collect any payments from the Grantor or any other Person or to realize upon any such collateral security or to exercise any such right of offset, or any release of the Grantor or any other Person or any such collateral security or right of offset, shall not relieve the Grantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Administrative Agent or any other

Secured Party against the Grantor.  For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.  Neither the Administrative Agent nor any other Secured Party shall have any obligation to protect, secure, perfect or insure any Lien at any time held by it as security for the Obligations or any property subject thereto.

Section 3.02    No Subrogation, Contribution or Reimbursement.  Notwithstanding any payment made by the Grantor hereunder or any set-off or application of funds of the Grantor by the Administrative Agent or any other Secured Party, the Grantor shall not be entitled to be subrogated to any of the rights of the Administrative Agent or any other Secured Party against the Grantor or any collateral security or right of offset held by the Administrative Agent or any other Secured Party for the payment of the Obligations, nor shall the Grantor seek or be entitled to seek any indemnity, exoneration, participation, contribution or reimbursement from the Grantor in respect of payments made by the Grantor hereunder until Security Termination, and the Grantor hereby expressly waives, releases, and agrees not to exercise any such rights of subrogation, reimbursement, indemnity and contribution until Security Termination.  The Grantor further agrees that to the extent that such waiver and release set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation, reimbursement, indemnity and contribution the Grantor may have against the Grantor or against any collateral or security or right of offset held by the Administrative Agent or any other Secured Party shall be junior and subordinate to any rights the Administrative Agent and the other Secured Parties may have against the Grantor and to all right, title and interest the Administrative Agent and the other Secured Parties may have in any collateral or security or right of offset.  Upon the occurrence and during the continuance of an Event of Default, the Administrative Agent, for the benefit of the Secured Parties, may use, sell or dispose of any item of Collateral or security as it sees fit, subject to Section 6.04, without regard to any subrogation rights the Grantor may have, and upon any disposition or sale, any rights of subrogation the Grantor may have shall terminate.

## ARTICLE IV
## Representations and Warranties

To induce the Lenders to enter into the Credit Agreement and to make their respective Loans, the Grantor hereby represents and warrants to the Administrative Agent and each Secured Party that:

Section 4.01    Representations in Credit Agreement.  The representations and warranties set forth in Article IV of the Credit Agreement are true and correct in all material respects (or, to the extent such representations and warranties specifically relate to an earlier date, on and as of such earlier date), provided that each reference in each such representation and warranty to the Grantor's knowledge shall, for the purposes of this Section 4.01, be deemed to be a reference to the Grantor's knowledge.

Section 4.02    Perfected Liens.  The security interests granted pursuant to this Agreement, upon filing of a UCC-1 financing statement in the appropriate filing office and the other actions listed on Schedule 3, will constitute valid perfected First Priority security interests, subject to Permitted Liens that are junior in priority to such First Priority security interests, in all of the Collateral which may be perfected by filing such financing statement in favor of the Administrative Agent, for the ratable benefit of the Secured Parties, as collateral security for the Grantor's Obligations, enforceable in accordance with the terms hereof.

Section 4.03    Legal Name, Organizational Status, Chief Executive Office.  On the date hereof, the correct legal name of the Grantor, the Grantor's jurisdiction of organization, organizational number, taxpayer identification number and the location of the Grantor's chief executive office or principal place of business are specified on Schedule 4.

Section 4.04    Prior Names, Addresses.    Schedule 5 correctly sets forth (a) all names and trade names that the Grantor has used in the last five years and (b) the chief executive office of the Grantor over the last five years (if different from that which is set forth in Section 4.03 above).

Section 4.05    Pledged Securities.

(a)    The shares (or such other interests) of Pledged Securities pledged by the Grantor hereunder constitute, as of the date hereof, all the issued and outstanding shares (or such other interests) of all classes of the Capital Stock of each Pledged Entity owned by the Grantor.  The Grantor is the record and beneficial owner of, and has good title to, the Pledged Securities pledged by it hereunder, free of any and all Liens or options in favor of, or claims of, any other Person, except the security interest created by this Agreement and Liens permitted by Section 6.2 of the Credit Agreement.

(b)    As of the date hereof, all the shares of the Pledged Securities have been duly and validly issued and are fully paid and nonassessable (or, with respect to the Pledged Securities that are Capital Stock in a partnership or limited liability company, has been duly and validly issued).

(c)    As of the date hereof, there are no restrictions on transfer (that have not been waived or otherwise consented to) in the Organizational Documents governing any Pledged Securities or any other agreement relating thereto which would limit or restrict:  (i) the grant of a security interest in the Pledged Securities, (ii) the perfection of such security interest or (iii) the exercise of remedies in respect of such perfected security interest in the Pledged Securities, in each case, as contemplated by this Agreement.  Upon the exercise of remedies in respect of the Pledged Securities, a transferee or assignee of such Pledged Securities shall become a holder of Capital Stock of the applicable Pledged Entity entitled to participate in the management thereof and, upon the transfer of the entire interest of the Grantor to any such transferee or assignee, the Grantor shall cease to be a holder of such Capital Stock.

(d)    The Grantor is the record and beneficial owner of the Investment Property pledged by it hereunder, free of any and all Liens or options in favor of, or claims of, any other Person, except (i) the security interest created by this Agreement and (ii) Liens permitted by Section 6.2 of the Credit Agreement.

(e)    As of the date hereof, no Pledged Entity is party to any Organizational Document that includes an election to treat the Capital Stock of the Grantor as a security under Section 8-103 of the UCC.

Section 4.06    Instruments and Chattel Paper.  The Grantor has delivered to the Administrative Agent all Collateral constituting Instruments and Chattel Paper having the outstanding or stated amount of greater than $25,000.  As of the date hereof, no Collateral constituting Chattel Paper or Instruments contains any statement therein to the effect that such Collateral has been assigned to an identified party other than the Administrative Agent, and the grant of a security interest in such Collateral in favor of the Administrative Agent hereunder does not violate the rights of any other Person as a secured party.

Section 4.07    Accounts.  The amount represented by the Grantor to the Administrative Agent and the Lenders from time to time as owing by each Account Debtor or by all Account Debtors in respect of the Accounts, Chattel Paper and Payment Intangibles will at such time be the materially correct amount actually owing by such Account Debtor or Account Debtors thereunder.  The place where the Grantor keeps its records concerning the Accounts, Chattel Paper and Payment Intangibles is the address set forth on Schedule 4.

Section 4.08     Governmental Obligors.  As of the date hereof, none of the Account Debtors on the Grantor's Accounts, Chattel Paper or Payment Intangibles is a Governmental Authority.

Section 4.09     Tangible Assets.  On the date hereof, the material Goods of the Grantor constituting Inventory and Equipment (other than mobile goods and Equipment employed at jobsites in the ordinary course of business in compliance with the terms of the Credit Agreement) are kept at the locations listed on Schedule 4.

Section 4.10     Commercial Tort Claims.

(a)  On the date hereof, except to the extent listed in Section 2.01 above, the Grantor has no rights in any Commercial Tort Claim with potential value in excess of $50,000.

(b)  Upon the filing of a financing statement against the Grantor covering any Commercial Tort Claim referred to in Section 5.07 hereof in the jurisdiction of the chief executive office set forth in Schedule 4 hereto, the security interest granted in such Commercial Tort Claim will constitute a valid perfected security interest in favor of the Administrative Agent, for the ratable benefit of the Secured Parties, as collateral security for the Grantor's Obligations, enforceable in accordance with the terms hereof against all creditors of the Grantor and any Persons purporting to purchase such Collateral from Grantor, which security interest shall be prior to all other Liens on such Collateral except for unrecorded liens permitted by the Credit Agreement which have priority over the Liens on such Collateral by operation of law.

## ARTICLE V
## Covenants

The Grantor covenants and agrees that, from and after the date of this Agreement until Security Termination:

Section 5.01     Covenants in Credit Agreement.  The Grantor shall take, or shall refrain from taking, as the case may be, each action that is necessary to be taken or not taken, as the case may be, so that no Default or Event of Default is caused by the failure to take such action or to refrain from taking such action by the Grantor.

Section 5.02     Maintenance of Perfected Security Interest; Further Documentation.

(a)     The Grantor shall maintain the security interest created by this Agreement as a perfected security interest and shall defend such security interest against the claims and demands of all Persons whomsoever.

(b)  At any time and from time to time, upon the reasonable request of the Administrative Agent, and at the sole expense of the Grantor, the Grantor will promptly and duly give, execute, deliver, indorse, file or record any and all financing statements, continuation statements, amendments, notices (including, without limitation, notifications to financial institutions and any other Person), contracts, agreements, assignments, certificates, stock powers or other instruments, obtain any and all approvals and consents of Governmental Authorities and take or cause to be taken any and all steps or acts that may be necessary or as the Administrative Agent may reasonably request to create, perfect, establish the priority of, or to preserve the validity, perfection or priority of, the Liens granted by this Agreement or to enable the Administrative Agent or any other Secured Party to enforce its rights, remedies, powers and privileges under this Agreement with respect to such Liens or to otherwise obtain or preserve the full benefits of this Agreement and the rights, powers and privileges herein granted.

(c)  Without limiting the obligations of the Grantor under Section 5.02(b):  (i) upon the reasonable request of the Administrative Agent, the Grantor shall take or cause to be taken all actions (other than any actions required to be taken by the Administrative Agent or any Lender) reasonably requested by the Administrative Agent to cause the Administrative Agent to (A) have "control" (within the meaning of Sections 9-104, 9-105, 9-106, and 9-107 of the UCC) over any Collateral constituting Deposit Accounts, Electronic Chattel Paper, Investment Property (including the Pledged Securities), or Letter-of-Credit Rights, including, without limitation, executing and delivering any agreements, in form and substance satisfactory to the Administrative Agent, with securities intermediaries, issuers or other Persons in order to establish "control", and the Grantor shall promptly notify the Administrative Agent of the Grantor's acquisition of any such Collateral, and (B) be a "protected purchaser" (as defined in Section 8-303 of the UCC); (ii) with respect to Collateral other than certificated securities and goods covered by a document in the possession of a Person other than the Grantor or the Administrative Agent, the Grantor shall obtain written acknowledgment that such Person holds possession for the Administrative Agent's benefit; and (iii) with respect to any Collateral constituting Goods that are in the possession of a bailee, the Grantor shall provide prompt notice to the Administrative Agent of any such Collateral then in the possession of such bailee, and the Grantor shall take or cause to be taken all actions (other than any actions required to be taken by the Administrative Agent or any other Secured Party) necessary or reasonably requested by the Administrative Agent to cause the Administrative Agent to have a perfected security interest in such Collateral under applicable law.

(d)  This Section 5.02 and the obligations imposed on the Grantor by this Section 5.02 shall be interpreted as broadly as possible in favor of the Administrative Agent and the other Secured Parties in order to effectuate the purpose and intent of this Agreement.

Section 5.03  Maintenance of Records.  The Grantor will keep and maintain, at its own cost and expense records of the Collateral in accordance with sound and prudent business practices.  For the Administrative Agent's and the other Secured Parties' further security, the Administrative Agent, for the ratable benefit of the Secured Parties, shall have a security interest in all of the Grantor's books and records pertaining to the Collateral, and the Grantor shall allow inspection of any such books and records by the Administrative Agent, any Lender or by their representatives in accordance with Section 5.7 of the Credit Agreement.

Section 5.04  Further Identification of Collateral.  The Grantor will furnish to the Administrative Agent and the Secured Parties from time to time, at the Grantor's sole cost and expense, statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Administrative Agent may reasonably request, all in reasonable detail.

Section 5.05  Pledged Securities.

(a)  If the Grantor shall become entitled to receive or shall receive any stock certificate or other instrument (including, without limitation, any certificate or instrument representing a dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate or instrument issued in connection with any reorganization), option or rights in respect of the Capital Stock of any Pledged Entity, whether in addition to, in substitution of, as a conversion of, or in exchange for, any shares (or such other interests) of the Pledged Securities, or otherwise in respect thereof, the Grantor shall accept the same as the agent of the Administrative Agent and the other Secured Parties, hold the same in trust for the Administrative Agent and the other Secured Parties and deliver the same forthwith to the Administrative Agent in the exact form received, duly indorsed by the Grantor to the Administrative Agent, if required, together with an undated stock power or other equivalent power covering such certificate or instrument duly executed in blank by the Grantor and with, if the Administrative Agent so requests,

- 10 -

signature guaranteed, to be held by the Administrative Agent, subject to the terms hereof, as additional collateral security for the Obligations.

(b)     In the case of the Grantor which is a Pledged Entity, such Pledged Entity agrees that (i) it will be bound by the terms of this Agreement relating to the Pledged Securities or Investment Property issued by it and will comply with such terms insofar as such terms are applicable to it, (ii) it will notify the Administrative Agent promptly in writing of the occurrence of any of the events described in Section 5.05(a) with respect to the Pledged Securities issued by it and (iii) the terms of Section 6.01(c) and Section 6.05 shall apply to it, *mutatis mutandis*, with respect to all actions that may be required of it pursuant to Section 6.01(c) or Section 6.05 with respect to the Pledged Securities issued by it.

(c)     Except as set forth in Schedule 2, the Pledged Securities will at all times constitute not less than 100% of the Capital Stock of the Pledged Entity thereof owned by the Grantor.  The Grantor will not permit any Pledged Entity of any of the Pledged Securities to issue any new shares (or other interests) of any class of Capital Stock of such Pledged Entity without the prior written consent of the Administrative Agent or as may be permitted by the Credit Agreement.

(d)     In the case of the Grantor which is a Pledged Entity, the Grantor agrees that (i) it will be bound by the terms of this Agreement relating to the Investment Property issued by it and will comply with such terms insofar as such terms are applicable to it, (ii) it will notify the Administrative Agent promptly in writing of the occurrence of any of the events described in Section 5.05(a) with respect to the Investment Property issued by it and (iii) the terms of Section 6.01(c), shall apply to it, mutatis mutandis, with respect to all actions that may be required of it pursuant to Section 6.01(c) with respect to the Investment Property issued by it.

(e)     In the case of the Grantor that is a holder of Capital Stock in a Pledged Entity, the Grantor hereby consents to the extent required by the applicable Organizational Document to the pledge by each other Grantor, pursuant to the terms hereof, of the Pledged Securities in such Pledged Entity and to the transfer of such Pledged Securities to the Administrative Agent or its nominee (on behalf of the Secured Parties) and to the substitution of the Administrative Agent or its nominee as a substituted holder of Capital Stock in such Pledged Entity with all the rights, powers and duties of a holder of Capital Stock in such Pledged Entity.

(f)     The Grantor shall not agree to any amendment of an Organizational Document that (i) in any way adversely affects the perfection of the security interest of the Administrative Agent in the Pledged Securities pledged by the Grantor hereunder or (ii) if the Grantor is a Pledged Entity, causes any such Organizational Document to include an election to treat the Capital Stock of the Grantor as a security under Section 8-103 of the UCC other than any such election in effect on the Closing Date.

Section 5.06     Instruments and Tangible Chattel Paper.  If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any Instrument or Tangible Chattel Paper in the outstanding or stated amount of greater than $25,000, such Instrument or Tangible Chattel Paper shall be promptly, but in any event within 3 Business Days, delivered to the Administrative Agent, duly endorsed in a manner satisfactory to the Administrative Agent, to be held as Collateral pursuant to this Agreement.

Section 5.07     Commercial Tort Claims.  If the Grantor shall at any time hold or acquire a Commercial Tort Claim that satisfies the requirements of the following sentence, the Grantor shall, within thirty (30) days after such Commercial Tort Claim satisfies such requirements, notify the Administrative Agent in a writing signed by the Grantor containing a brief description thereof, and granting to the Administrative Agent in such writing (for the benefit of the Secured Parties) a security interest therein and

in the Proceeds thereof, all upon the terms of this Agreement, with such writing to be in form and substance satisfactory to the Administrative Agent. The provisions of the preceding sentence shall apply only to a Commercial Tort Claim that satisfies the following requirements: (i) the monetary value claimed by or payable to the relevant Grantor in connection with such Commercial Tort Claim shall exceed $50,000 and either (ii) (A) the Grantor shall have filed a law suit or counterclaim or otherwise commenced legal proceedings (including, without limitation, arbitration proceedings) against the Person against whom such Commercial Tort Claim is made, or (B) the Grantor and the Person against whom such Commercial Tort Claim is asserted shall have entered into a settlement agreement with respect to such Commercial Tort Claim. In addition, to the extent that the existence of any Commercial Tort Claim held or acquired by the Grantor is disclosed by the Grantor in any public filing with the Securities and Exchange Commission or any successor thereto or analogous Governmental Authority, or to the extent that the existence of any such Commercial Tort Claim is disclosed in any press release issued by the Grantor, then, upon the request of the Administrative Agent, the relevant Grantor shall, within thirty (30) days after such request is made, transmit to the Administrative Agent a writing signed by the Grantor containing a brief description of such Commercial Tort Claim and granting to the Administrative Agent in such writing (for the benefit of the Secured Parties) a security interest therein and in the Proceeds thereof, all upon the terms of this Agreement, with such writing to be in form and substance satisfactory to the Administrative Agent.

## ARTICLE VI
## Remedial Provisions

Section 6.01    Pledged Securities.

(a)    Unless an Event of Default shall have occurred and be continuing and the Administrative Agent shall have given notice to the relevant Grantor of the Administrative Agent's intent to exercise its corresponding rights pursuant to Section 6.01(b), the Grantor shall be permitted to receive all cash dividends paid in respect of the Pledged Securities paid in the normal course of business of the relevant Pledged Entity, to the extent permitted in the Credit Agreement and by the terms of the applicable Organizational Documents, and to exercise all voting and corporate, membership or partnership rights with respect to the Pledged Securities.

(b)    If an Event of Default shall occur and be continuing, then at any time in the Administrative Agent's discretion and without notice, (i) the Administrative Agent shall have the right to receive any and all cash dividends, payments or other Proceeds paid in respect of the Pledged Securities and make application thereof to the Obligations in accordance with Section 2.10 of the Credit Agreement, and (ii) any or all of the Pledged Securities shall be registered in the name of the Administrative Agent or its nominee, and the Administrative Agent or its nominee may thereafter exercise (x) all voting, corporate, membership, partnership and other rights pertaining to such Pledged Securities at any meeting of shareholders (or other equivalent body) of the relevant Pledged Entity or Pledged Entities or otherwise and (y) any and all rights of conversion, exchange and subscription and any other rights, privileges or options pertaining to such Pledged Securities as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Securities upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of any Pledged Entity, or upon the exercise by the Grantor or the Administrative Agent of any right, privilege or option pertaining to such Pledged Securities, and in connection therewith, the right to deposit and deliver any and all of the Pledged Securities with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as the Administrative Agent may determine), all without liability except to account for property actually received by it, but the Administrative Agent shall have no duty to the Grantor to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(c)     The Grantor hereby authorizes and instructs each Pledged Entity issuing any Pledged Securities pledged by the Grantor hereunder (and each Pledged Entity party hereto hereby agrees) to (i) comply with any instruction received by it from the Administrative Agent in writing that (x) states that an Event of Default has occurred and is continuing and (y) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from the Grantor, and the Grantor agrees that each Pledged Entity shall be fully protected in so complying, and (ii) unless otherwise expressly permitted hereby, upon and after receipt of the instruction described in clause (i), pay any dividends or other payments with respect to the Pledged Securities directly to the Administrative Agent.

(d)     After the occurrence and during the continuation of an Event of Default, if the Pledged Entity issuing any Pledged Securities is the subject of bankruptcy, insolvency, receivership, custodianship or other similar proceedings under the supervision of any Governmental Authority, then all rights of the applicable Grantor in respect thereof to exercise the voting and other consensual rights which the Grantor would otherwise be entitled to exercise with respect to the Pledged Securities issued by such Pledged Entity shall cease, and all such rights shall thereupon become vested in the Administrative Agent who shall thereupon have the sole right to exercise, such voting and other consensual rights, but the Administrative Agent shall have no duty to exercise any such voting or other consensual rights and shall not be responsible for any failure to do so or delay in so doing.

Section 6.02     Collections on Accounts, Etc.  The Administrative Agent hereby authorizes the Grantor to collect upon the Accounts, Instruments, Chattel Paper and Payment Intangibles and the Administrative Agent may curtail or terminate said authority at any time after the occurrence and during the continuance of an Event of Default.  Upon the request of the Administrative Agent at any time after the occurrence and during the continuance of an Event of Default, the Grantor shall notify the Account Debtors that the applicable Accounts, Chattel Paper and Payment Intangibles have been assigned to the Administrative Agent for the ratable benefit of the Secured Parties and that payments in respect thereof shall be made directly to the Administrative Agent.  Upon the occurrence and during the continuance of an Event of Default, the Administrative Agent may in its own name or in the name of others communicate with the Account Debtors to verify with them to its satisfaction the existence, amount and terms of any Accounts, Chattel Paper or Payment Intangibles.

Section 6.03     Proceeds.  If required by the Administrative Agent at any time after the occurrence and during the continuance of an Event of Default, any payments in respect of Accounts, Instruments, Chattel Paper and Payment Intangibles, when collected or received by the Grantor, and any other cash or non-cash Proceeds received by the Grantor upon the sale or other disposition of any Collateral, shall be forthwith (and, in any event, within two Business Days) deposited by the Grantor in the exact form received, duly indorsed by the Grantor to the Administrative Agent if required, in a special collateral account maintained by the Administrative Agent, subject to withdrawal by the Administrative Agent for the ratable benefit of the Secured Parties only, as hereinafter provided, and, until so turned over, shall be held by the Grantor in trust for the Administrative Agent for the ratable benefit of the Secured Parties, segregated from other funds of any the Grantor.  Each deposit of any such Proceeds shall be accompanied by a report identifying in reasonable detail the nature and source of the payments included in the deposit.  All Proceeds (including, without limitation, Proceeds constituting collections of Accounts, Chattel Paper, Instruments) while held by the Administrative Agent (or by the Grantor in trust for the Administrative Agent for the ratable benefit of the Secured Parties) shall continue to be collateral security for all of the Obligations and shall not constitute payment thereof until applied as hereinafter provided.  At such intervals as may be agreed upon by the Grantor and the Administrative Agent, or, if an Event of Default shall have occurred and be continuing, at any time at the Administrative Agent's election, the Administrative Agent shall apply all or any part of the funds on deposit in said special collateral account on account of the Obligations in accordance with Section 2.10 of the Credit Agreement.

Section 6.04    Remedies.

(a)    If an Event of Default shall occur and be continuing, the Administrative Agent, on behalf of the Secured Parties, may exercise in its discretion, in addition to all other rights, remedies, powers and privileges granted to them in this Agreement, the other Loan Documents and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights, remedies, powers and privileges of a secured party under applicable law or otherwise available at law or equity.  Without limiting the generality of the foregoing, the Administrative Agent, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon the Grantor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, at any exchange, broker's board or office of the Administrative Agent or any other Secured Party or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk.  The Administrative Agent or any other Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in the Grantor, which right or equity is hereby waived and released.  If an Event of Default shall occur and be continuing, the Grantor further agrees, at the Administrative Agent's request, to assemble the Collateral and make it available to the Administrative Agent at places which the Administrative Agent shall reasonably select, whether at the Grantor's premises or elsewhere.  Any such sale or transfer by the Administrative Agent either to itself or to any other Person shall be absolutely free from any claim of right by Grantor, including any equity or right of redemption, stay or appraisal which Grantor has or may have under any rule of law, regulation or statute now existing or hereafter adopted.  Upon any such sale or transfer, the Administrative Agent shall have the right to deliver, assign and transfer to the purchaser or transferee thereof the Collateral so sold or transferred.  The Administrative Agent shall apply the net proceeds of any action taken by it pursuant to this Section 6.04, after deducting all reasonable costs and expenses of every kind incurred in connection therewith or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Administrative Agent and the other Secured Parties hereunder, including, without limitation, reasonable attorneys' fees and disbursements, in accordance with Section 2.10 of the Credit Agreement, and only after such application and after the payment by the Administrative Agent of any other amount required by any provision of law, including, without limitation, Section 9-615 of the UCC, need the Administrative Agent account for the surplus, if any, to the Grantor.  The Grantor agrees that it is subject to the waivers by the Loan Parties set forth in Section 9.3(b) of the Credit Agreement.  If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 days before such sale or other disposition.

(b)    In the event that the Administrative Agent elects not to sell the Collateral in connection with the exercise of remedies provided pursuant to this Section 6.04, the Administrative Agent retains its rights to dispose of or utilize the Collateral or any part or parts thereof in any manner authorized or permitted by law or in equity, and to apply the proceeds of the same towards payment of the Obligations.  Each and every method of disposition of the Collateral described in this Agreement shall constitute disposition in a commercially reasonable manner.  The Administrative Agent may appoint any Person as agent to perform any act or acts necessary or incident to any sale or transfer of the Collateral.

Section 6.05    Private Sales of Pledged Securities.    The Grantor recognizes that the Administrative Agent may be unable to effect a public sale of any or all the Pledged Securities, by reason of certain prohibitions contained in the Securities Act and applicable state securities laws or otherwise, or

may determine that a public sale is impracticable or not commercially reasonable and, accordingly, may resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. The Grantor acknowledges and agrees that any such private sale may result in prices and other terms less favorable than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner. The Administrative Agent shall be under no obligation to delay a sale of any of the Pledged Securities for the period of time necessary to permit the relevant Pledged Entity to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if such Pledged Entity would agree to do so. The Grantor agrees to use its best efforts to do or cause to be done all such other acts as may reasonably be necessary to make such sale or sales of all or any portion of the Pledged Securities pursuant to this Section 6.05 valid and binding and in compliance with any and all other applicable Governmental Requirements. The Grantor further agrees that a breach of any of the covenants contained in this Section 6.05 will cause irreparable injury to the Administrative Agent and the other Secured Parties, that the Administrative Agent and the other Secured Parties have no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 6.05 shall be specifically enforceable against the Grantor, and the Grantor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants.

Section 6.06    Deficiency. The Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay its Obligations and the fees and disbursements of any attorneys employed by the Administrative Agent or any other Secured Party to collect such deficiency.

Section 6.07    Non-Judicial Enforcement. The Administrative Agent may enforce its rights hereunder without prior judicial process or judicial hearing, and to the extent permitted by law, the Grantor expressly waives any and all legal rights which might otherwise require the Administrative Agent to enforce its rights by judicial process.

## ARTICLE VII
## The Administrative Agent

Section 7.01    Administrative Agent's Appointment as Attorney-in-Fact, Etc.

(a)    The Grantor hereby irrevocably constitutes and appoints the Administrative Agent and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Grantor and in the name of the Grantor or in its own name, for the purpose of carrying out the terms of this Agreement, to take any and all reasonably appropriate action and to execute any and all documents and instruments which may be reasonably necessary or desirable to accomplish the purposes of this Agreement, and, without limiting the generality of the foregoing, the Grantor hereby gives the Administrative Agent the power and right, on behalf of the Grantor, without notice to or assent by the Grantor, to do any or all of the following:

(i)    pay or discharge Taxes and Liens levied or placed on or threatened against the Collateral, effect any repairs or any insurance called for by the terms of this Agreement and pay all or any part of the premiums therefor and the costs thereof;

(ii)    execute, in connection with any sale provided for in Section 6.04 or Section 6.05, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral; and

- 15 -

(iii)    (A) direct any party liable for any payment under any of the Collateral to make payment of any and all moneys due or to become due thereunder directly to the Administrative Agent or as the Administrative Agent shall direct; (B) take possession of and indorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under any Account, Instrument, General Intangible, Chattel Paper or Payment Intangible or with respect to any other Collateral, and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by the Administrative Agent for the purpose of collecting any all such moneys due under any Account, Instrument or  General Intangible or with respect to any other Collateral whenever payable; (C) ask or demand for, collect, and receive payment of and receipt for, any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any Collateral; (D) sign and indorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications, notices and other documents in connection with any of the Collateral; (E) receive, change the address for delivery, open and dispose of mail addressed to the Grantor, and to execute, assign and indorse negotiable and other instruments for the payment of money, documents of title or other evidences of payment, shipment or storage for any form of Collateral on behalf of and in the name of the Grantor; (F) commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any portion thereof and to enforce any other right in respect of any Collateral; (G) defend any suit, action or proceeding brought against the Grantor with respect to any Collateral; (H) settle, compromise or adjust any such suit, action or proceeding and, in connection therewith, give such discharges or releases as the Administrative Agent may deem appropriate; and (I) generally, sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though the Administrative Agent were the absolute owner thereof for all purposes, and do, at the Administrative Agent's option and the Grantor's expense, at any time, or from time to time, all acts and things which the Administrative Agent deems necessary to protect, preserve or realize upon the Collateral and the Administrative Agent's and the other Secured Parties' security interests therein and to effect the intent of this Agreement, all as fully and effectively as the Grantor might do.

Anything in this Section 7.01(a) to the contrary notwithstanding, the Administrative Agent agrees that it will not exercise any rights under the power of attorney provided for in this Section 7.01(a) unless an Event of Default shall have occurred and be continuing.

(b)    If the Grantor fails to perform or comply with any of its agreements contained herein within the applicable grace periods, the Administrative Agent may, at its option, but without any obligation so to do, to perform or comply, or otherwise cause performance or compliance, with such agreement.

(c)    The reasonable expenses of the Administrative Agent incurred in connection with actions undertaken as provided in this Section 7.01, together with interest thereon at the Default Rate, but in no event to exceed the Highest Lawful Rate, from the date of payment by the Administrative Agent to the date reimbursed by the relevant Grantor, shall be payable by the Grantor to the Administrative Agent on demand.

(d)    The Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue and in compliance hereof.  All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

Section 7.02    Duty of Administrative Agent.  The Administrative Agent's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the UCC or otherwise, shall be to deal with it in the same manner as the Administrative Agent deals

with similar property for its own account and the Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which comparable secured parties accord comparable collateral. Neither the Administrative Agent, any other Secured Party nor any of their respective officers, directors, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Grantor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof. The powers conferred on the Administrative Agent and the other Secured Parties hereunder are solely to protect the Administrative Agent's and the other Secured Parties' interests in the Collateral and shall not impose any duty upon the Administrative Agent or any other Secured Party to exercise any such powers. The Administrative Agent and the other Secured Parties shall be accountable only for amounts that they actually receive as a result of the exercise of such powers, and neither they nor any of their officers, directors, employees or agents shall be responsible to the Grantor for any act or failure to act hereunder, except for their own gross negligence or willful misconduct. To the fullest extent permitted by applicable law, the Administrative Agent and the Secured Parties shall be under no duty whatsoever to make or give any presentment, notice of dishonor, protest, demand for performance, notice of non-performance, notice of intent to accelerate, notice of acceleration, or other notice or demand in connection with any Collateral or the Obligations, or to take any steps necessary to preserve any rights against the Grantor or other Person or ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not it has or is deemed to have knowledge of such matters. The Grantor, to the extent permitted by applicable law, waives any right of marshaling in respect of any and all Collateral, and waives any right to require the Administrative Agent or any other Secured Party to proceed against the Grantor or other Person, exhaust any Collateral or enforce any other remedy which the Administrative Agent or any other Secured Party now has or may hereafter have against the Grantor, the Grantor or any other Person.

Section 7.03    Financing Statements. Pursuant to the UCC and any other applicable law, the Grantor authorizes the Administrative Agent, its counsel or its representative, at any time and from time to time, to file or record financing statements, continuation statements, amendments thereto and other filing or recording documents or instruments with respect to the Collateral without the signature of the Grantor in such form and in such offices as the Administrative Agent reasonably determine necessary or appropriate to perfect the security interests of the Administrative Agent under this Agreement. Additionally, the Grantor authorizes the Administrative Agent, its counsel or its representative, at any time and from time to time, to file or record such financing statements that describe the collateral covered thereby as "all assets of the Grantor", "all personal property of the Grantor" or words of similar effect. A photographic or other reproduction of this Agreement shall be sufficient as a financing statement or other filing or recording document or instrument for filing or recording in any jurisdiction.

Section 7.04    Authority of Administrative Agent. The Grantor acknowledges that the rights and responsibilities of the Administrative Agent under this Agreement with respect to any action taken by the Administrative Agent or the exercise or non-exercise by the Administrative Agent of any option, voting right, request, judgment or other right or remedy provided for herein or resulting or arising out of this Agreement shall, as between the Administrative Agent and the other Secured Parties, be governed by the Credit Agreement and by such other agreements with respect thereto as may exist from time to time among them, but, as between the Administrative Agent and the Grantor, the Administrative Agent shall be conclusively presumed to be acting as agent for the Secured Parties with full and valid authority so to act or refrain from acting, and the Grantor shall not be under any obligation, or entitlement, to make any inquiry respecting such authority.

## ARTICLE VIII
## Miscellaneous

Section 8.01    Waiver.  No failure on the part of the Administrative Agent or any other Secured Party to exercise and no delay in exercising, and no course of dealing with respect to, any right, remedy, power or privilege under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under any of the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege; provided, that only the Administrative Agent, in its capacity as such, shall be entitled to take action in accordance with the terms of the Loan Documents on behalf of the Secured Parties.  The rights, remedies, powers and privileges provided herein are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.  The exercise by the Administrative Agent or any other Secured Party of any one or more of the rights, powers and remedies herein shall not be construed as a waiver of any other rights, powers and remedies, including, without limitation, any rights of set-off.

Section 8.02    Notices.  All notices and other communications provided for herein shall be given in the manner and subject to (i) the terms of the applicable notice provisions of Section 10.1 of the Credit Agreement; *provided* that any such notice, request or demand to or upon to the Grantor shall be addressed to the Grantor at its notice address set forth on Schedule 1 (or such other notice address as to which such Pledgor may notify the Administrative Agent in writing from time to time).

Section 8.03    Payment of Expenses, Indemnities, Etc.

(a)    The Grantor agrees to pay or reimburse the Administrative Agent and each other Secured Party for all reasonable advances, charges, costs and expenses (including, without limitation, all costs and expenses of holding, preparing for sale and selling, collecting or otherwise realizing upon the Collateral and all attorneys' fees, legal expenses and court costs) incurred by any Secured Party in connection with the exercise of its respective rights and remedies hereunder to the extent the Grantor would be required to do so pursuant to Section 10.2 or 10.3 of the Credit Agreement, including, without limitation, any advances, charges, costs and expenses that may be incurred in any effort to enforce any of the provisions of this Agreement or any obligation of the Grantor in respect of the Collateral or in connection with (i) the preservation of the Lien of, or the rights of the Administrative Agent or any other Secured Party under this Agreement, (ii) any actual or attempted sale, lease, disposition, exchange, collection, compromise, settlement or other realization in respect of, or care of, the Collateral, including all such costs and expenses incurred in any bankruptcy, reorganization, workout or other similar proceeding, or (iii) otherwise enforcing or preserving any rights under this Agreement and the other Loan Documents to which the Grantor is a party.

(b)    The Grantor agrees to pay, and to save the Administrative Agent and the other Secured Parties harmless from, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (including, without limitation, court costs and attorneys' fees, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement) incurred because of, incident to, or with respect to, the Collateral (including, without limitation, any exercise of rights or remedies in connection therewith) or the execution, delivery, enforcement, performance and administration of this Agreement, to the extent the Grantor would be required to do so pursuant to Section 10.2 or 10.3 of the Credit Agreement.  All amounts for which the Grantor is liable pursuant to this Section 8.03 shall be due and payable by the Grantor to the Secured Parties within ten (10) days after demand therefor.

- 18 -

Section 8.04    Amendments in Writing; Conflicts.    None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except in accordance with Section 10.6 of the Credit Agreement.    In the event of a conflict between any term or provision of this Agreement and the Credit Agreement, the Credit Agreement shall control.

Section 8.05    Successors and Assigns.    The provisions of this Agreement shall be binding upon the Grantor and its successors and assigns and shall inure to the benefit of the Administrative Agent and the other Secured Parties and their respective successors and assigns; provided that such transfers and assignments are permitted by and have been made pursuant to the Credit Agreement.

Section 8.06    Invalidity.    In the event that any one or more of the provisions contained in this Agreement or in any of the Loan Documents to which the Grantor is a party shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or such other Loan Document.

Section 8.07    Counterparts.    This Agreement may be executed in any number of counterparts by facsimile and other electronic means, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or e-mail (in .pdf format) shall be effective as delivery of a manually executed counterpart of this Agreement.

Section 8.08    Survival.    The obligations of the parties under Section 8.03 shall survive Security Termination.    To the extent that any payments on the Obligations or proceeds of any Collateral are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver or other Person under any bankruptcy law, common law or equitable cause, then to such extent, the Obligations so satisfied shall be revived and continue as if such payment or proceeds had not been received and the Administrative Agent's and the other Secured Parties' Liens, security interests, rights, powers and remedies under this Agreement and each other Loan Document shall continue in full force and effect.    In such event, each Loan Document shall be automatically reinstated and the Grantor shall take such action as may be reasonably requested by the Administrative Agent to effect such reinstatement and Security Termination shall not be deemed to have occurred.

Section 8.09    Captions.    Captions and section headings appearing herein are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this Agreement.

Section 8.10    No Oral Agreements.    **THIS AGREEMENT, THE CREDIT AGREEMENT, THE OTHER LOAN DOCUMENTS EMBODY THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN THE PARTIES AND SUPERSEDE ALL OTHER AGREEMENTS AND UNDERSTANDINGS BETWEEN SUCH PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF.    THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES**.

Section 8.11    Governing Law; Submission to Jurisdiction.

(a)    **THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

(b)    **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY HERETO ARISING OUT OF OR RELATING HERETO OR ANY OTHER LOAN DOCUMENT,**

OR ANY OF THE OBLIGATIONS, MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE, COUNTY AND CITY OF NEW YORK. BY EXECUTING AND DELIVERING THIS AGREEMENT, EACH PARTY HERETO, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (i) ACCEPTS GENERALLY AND UNCONDITIONALLY THE EXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS; (ii) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (iii) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE APPLICABLE GRANTOR AT ITS ADDRESS PROVIDED ON THE SCHEDULES HERETO IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE GRANTOR IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT; AND (iv) AGREES THAT THE ADMINISTRATIVE AGENT AND THE SECURED PARTIES RETAIN THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO BRING PROCEEDINGS AGAINST THE GRANTOR IN THE COURTS OF ANY OTHER JURISDICTION.

(c)     EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER OR UNDER ANY OF THE OTHER LOAN DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER HEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS. EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION 8.11 AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HEREOF OR HERETO. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

Section 8.12     Acknowledgments. The Grantor hereby acknowledges that:

(a)     it has been advised by counsel in the negotiation, execution and delivery of this Agreement;

(b)     neither the Administrative Agent nor any other Secured Party has any fiduciary relationship with or duty to the Grantor arising out of or in connection with this Agreement, the Credit Agreement or any of the other Loan Documents, and the relationship between the Grantor, on the one hand, and the Administrative Agent and the other Secured Parties, on the other hand, in connection herewith or therewith is solely that of debtor and creditor;

(c)    no Joint Venture is created hereby, by the Credit Agreement or any other Loan Document or by or otherwise exists by virtue of the transactions contemplated hereby among the Secured Parties or among the Grantor and the Lenders;

(d)    **EACH PARTY HERETO AGREES AND COVENANTS THAT IT WILL NOT CONTEST THE VALIDITY OR ENFORCEABILITY OF ANY EXCULPATORY PROVISION OF THIS AGREEMENT AND THE OTHER COLLATERAL DOCUMENTS ON THE BASIS THAT THE PARTY HAD NO NOTICE OR KNOWLEDGE OF SUCH PROVISION OR THAT THE PROVISION IS NOT "CONSPICUOUS"**; and

(e)    The Grantor warrants and agrees that each of the waivers and consents set forth in this Agreement are made voluntarily and unconditionally after consultation with outside legal counsel and with full knowledge of their significance and consequences, with the understanding that events giving rise to any defense or right waived may diminish, destroy or otherwise adversely affect rights which the Grantor otherwise may have against the Grantor, the Administrative Agent or the other Secured Parties or any other Person or against any Collateral.  If, notwithstanding the intent of the parties that the terms of this Agreement shall control in any and all circumstances, any such waivers or consents are determined to be unenforceable under applicable law, such waivers and consents shall be effective to the maximum extent permitted by law.

Section 8.13    Set-Off.  The Grantor agrees that, in addition to (and without limitation of) any right of set-off, bankers' lien or counterclaim a Secured Party may otherwise have pursuant to Section 10.4 of the Credit Agreement, each Secured Party shall have the right and be entitled (after consultation with the Administrative Agent), at its option, to offset, to the extent provided in Section 10.4 of the Credit Agreement, balances held by it or by any of its Affiliates for account of the Grantor at any of its offices, in Dollars or in any other currency, against any principal of or interest on any of such Secured Party's Loans, or any other amount due and payable to such Secured Party hereunder, which is not paid when due (regardless of whether such balances are then due to such Person), in which case it shall promptly notify the Grantor and the Administrative Agent thereof, provided that such Secured Party's failure to give such notice shall not affect the validity thereof.

Section 8.14    Releases.

(a)    Release Upon Payment in Full.  The grant of a security interest hereunder and all of the rights, powers and remedies in connection herewith shall, to the extent permitted by law, remain in full force and effect until Security Termination or in connection with a transaction described in clause (b) below.  Upon the occurrence of Security Termination or a transaction described in clause (b) below, this Agreement and the Lien created hereby shall terminate; and in connection with any such release or termination, the Administrative Agent, at the request and expense of the applicable Grantor, will execute and deliver to the Grantor such documents and instruments (in form and substance satisfactory to the party executing the same) evidencing such release or termination as the Grantor may reasonably request and will assign, transfer and deliver to the Grantor, without recourse and without representation or warranty, such of the Collateral as may then be in the possession of Administrative Agent (or, in the case of any partial release of Collateral, such of the Collateral so being released as may be in its possession).

(b)    Further Assurances.  If any of the Collateral shall be sold, transferred or otherwise disposed of by the Grantor in a transaction permitted by the Credit Agreement, then the Administrative Agent, at the request and sole expense of the Grantor, shall promptly execute and deliver to the Grantor all releases or other documents reasonably necessary or desirable for the release of the Liens created hereby on such Collateral.  At the request and sole expense of the Grantor, the Grantor shall be released from its obligations hereunder in the event that all the Capital Stock of the Grantor shall be sold, transferred or

otherwise disposed of in a transaction permitted by the Credit Agreement; provided that the Grantor shall have delivered to the Administrative Agent, at least ten (10) Business Days prior to the date of the proposed release, a written request for release identifying the relevant Grantor and the terms of the sale or other disposition in reasonable detail, including the price thereof and any expenses in connection therewith, together with a certification by the Grantor stating that such transaction is in compliance with the Credit Agreement and the other Loan Documents.

(c)     Retention in Satisfaction.  Except as may be expressly applicable pursuant to Section 9-620 of the UCC, no action taken or omission to act by the Administrative Agent or the other Secured Parties hereunder, including, without limitation, any exercise of voting or consent rights or any other action taken or inaction, shall be deemed to constitute a retention of the Collateral in satisfaction of the Obligations or otherwise to be in satisfaction of the Obligations, and the Obligations shall remain in full force and effect, until the Administrative Agent and the other Secured Parties shall have applied payments (including, without limitation, collections from Collateral) towards the Obligations in the full amount then outstanding or until such subsequent time as is provided in Section 8.14(a).

Section 8.15     Reinstatement.  The obligations of the Grantor under this Agreement (including, without limitation, the provision of collateral herein) shall continue to be effective, or be reinstated, as the case may be, and Security Termination shall not be deemed to have occurred, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by the Administrative Agent or any other Secured Party upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Grantor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, the Grantor or any substantial part of its property, or otherwise, all as though such payments had not been made.

Section 8.16     Acceptance.  The Grantor hereby expressly waives notice of acceptance of this Agreement, acceptance on the part of the Administrative Agent and the other Secured Parties being conclusively presumed by their request for this Agreement and delivery of the same to the Administrative Agent.

Section 8.17     Administrative Agent.  The parties hereto agree that the Administrative Agent shall be afforded all of the rights, protections, indemnities, immunities and privileges afforded to the Administrative Agent under the Credit Agreement in connection with the execution of this Agreement and performance of its obligations hereunder.

[Remainder of Page Intentionally Left Blank; Signature Pages Follow]

IN WITNESS WHEREOF, each of the undersigned has caused this Collateral Agreement to be duly executed and delivered as of the date first above written.

**GRANTOR:**                                      **MTE HOLDINGS LLC**

By: _____

Name: Mark A. Siffin

*Title:*   Authorized Signatory

SIGNATURE PAGE
COLLATERAL AGREEMENT

Acknowledged and Agreed to as of the date hereof by:

**ADMINISTRATIVE AGENT:**  **RIVERSTONE CREDIT MANAGEMENT, LLC**

By: _____
Name: Christopher Abbate
Title:  Managing Director

## GRANTOR DISCLOSURE SCHEDULES

These Grantor Disclosure Schedules are delivered by MTE Holdings LLC, a Delaware limited liability company (the "**Grantor**"), in connection with that certain Collateral Agreement (the "**Agreement**") dated as of September 17, 2018, by and among the Grantor in favor of Riverstone Credit Management, LLC, as administrative agent and collateral agent for the Lenders.

Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to such terms in the Agreement and all references to Schedules of the Grantor Disclosure Schedules are references to the Schedules herein.

## Schedule 1

**NOTICE ADDRESSES OF GRANTOR**

For the Grantor:

c/o Maefield Development Corporation
280 East 96th Street, Suite 210
Indianapolis, Indiana 46240
Attention: Bob Quinn
Fax: (317) 805-0777
Email: bquinn@maefield.com

**Schedule 2**

**DESCRIPTION OF PLEDGED SECURITIES**

| Owner | Loan Party | Percentage Owned | Form of Entity | Class of Capital Stock | No. of Capital Stock | Certificated or Uncertificated | Certificate No. |
|---|---|---|---|---|---|---|---|
| MTE Holdings LLC | MDC Energy LLC | 100% | Limited liability company | Limited liability company membership interest | N/A | Certificated | 1 |

**Schedule 3**

**FILINGS AND OTHER ACTIONS**
**REQUIRED TO PERFECT SECURITY INTERESTS**

1.     Filing of UCC-1 Financing Statements with respect to the Collateral with the Secretary of State of the state set forth below opposite the Grantor's name:

| Owner/Grantor | State(s) |
|---|---|
| MTE Holdings LLC | Delaware |

2.     Delivery to the Administrative Agent of all Pledged Securities consisting of certificated securities, if any, in each case properly endorsed for transfer in blank.

**Schedule 4**

**CORRECT LEGAL NAME, LOCATION OF JURISDICTION OF ORGANIZATION, ORGANIZATIONAL IDENTIFICATION NUMBER, TAXPAYER IDENTIFICATION NUMBER AND CHIEF EXECUTIVE OFFICE**

Loan Party: MTE Holdings LLC
Current Jurisdiction of Organization: Delaware
Organizational Number: 5544287
Tax ID Number: 47-1017894
Locations of Chief Executive Office over the last Five Years: 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240
Current Location of Chief Executive Office: 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240

## Schedule 5

**PRIOR NAMES AND PRIOR CHIEF EXECUTIVE OFFICE**

1. MTE Holdings LLC

    a. Prior Names:   None.

    b. Prior Chief Executive Offices:   None.

**<u>Schedule 6</u>**

**COMMERCIAL TORT CLAIMS**

None.

## ACKNOWLEDGMENT AND CONSENT

The undersigned hereby acknowledges receipt of a copy of the Collateral Agreement dated as of September 17, 2018 (the "**Agreement**"), made by the Grantor parties thereto for the benefit of Riverstone Credit Management, LLC, as Administrative Agent. The undersigned agrees for the benefit of the Administrative Agent and the other Secured Parties (as defined in the Agreement) as follows:

1.      The undersigned will be bound by the terms of the Agreement and will comply with such terms insofar as such terms are applicable to the undersigned.

2.      The terms of Sections 5.02(c) and 5.03 of the Agreement shall apply to it, *mutatis mutandis*, with respect to all actions that may be required of it pursuant to Sections 5.02(c) or 5.03 of the Agreement.

*[NAME OF PLEDGED ENTITY]*

By:      _____

Title:      _____

Address for Notices:

_____

_____

_____

Fax:      _____

**\*This consent is necessary only with respect to any Pledged Entity which is not also a Grantor. This acknowledgement and consent is not required to be delivered by any Pledged Entity that is not controlled by a Grantor.**