**FILED**

November 14, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____S.G._____

DEPUTY

## THE UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF TEXAS

200 East Wall Street, Midland, Texas 79701

Peter I. Shah, Pro Se
132 Montfort Drive
Belle Mead, New Jersey. 08502
Ph: 908 432 5030
**Email: petershah@msn.com**

| | |
|---|---|
| **BENNETT,**　　**PLAINTIFF**<br><br>V.<br><br>**SIFFIN, ET AL**<br><br>　　　　**DEFENDANTS** | CIVIL ACTION<br>JURY TRIAL<br><br>**7:21-CV-00214-DC-RCG**<br><br>**HON. RONALD C. GRIFFIN**<br><br>JOINDER  MOTION |

## VERIFIED JOINDER

I, Peter I. Shah, Pro Se, over 21 years of age  ('Shah' or 'I'),
file this  joinder[1] motion  to  be added as a Plaintiff in this case
for the following reasons. Additionally, I request the Court and
all related parties to serve me at the above mailing address or
via above email address. Thank you.

---

[1]  **Rule 20—** Permissive Joinder of Parties. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.(some text ommited). A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiff's according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

1

## SHORT STATEMENT

1.   I am an owner of the 20.40 acres of real property in Reeves County, Texas having property ID 15281. This real property consists of four 5.1 acre lots- briefly described as lots 31, 32, 33, 34 of Sec 8 Blk C18.

2.   The defunct  MDC Energy LLC., while at the initial stage of bankruptcy (Jan 2020) had built the tank battery , gas flare and related equipment on my surface land. I had not given any permission to build.

3.   I had filed two administrative payment claims in the bankruptcy court-which were denied. (Exhibit A).

4.   I was never told of any gas flare being installed on my surface.

## REASONS[2]

5.   During the pendency of the bankruptcy- defendants Mr. Siffin et al here acted in a fraudulent way and hid their intention to build an illegal methane gas flare on my property[3].

6.   From the inception of the gas flare on my property until about October 2021, the management of a bankrupt debtor (MDC Et

---

[2] I would like to bring to the Court's attention that I am not an attorney and English is my 2nd language. And so, I request the Court to provide me with as much liberty as possible in my pleadings. Furthermore, I do apologize to everyone for my syntaxing and  grammatical mistakes. Thank you.

[3] Methane is roughly 80 times more potent when released into the atmosphere. Methane (CH4) is a hydrocarbon that is a primary component of natural gas. Methane is also a greenhouse gas (GHG), so its presence in the atmosphere affects the earth's temperature and climate system.

Al) without any due care  flared unpermitted methane gas in the air and created unlivable/unbreathable air conditions for me and my neighbors.

7.  In response to the inquiry about the quantity of  gas being flared, defendants' here answered this way, " There is no way to estimate how much gas was vented as we don't measure our tank gas MCFD[4] since it isn't sold to gas sales but instead sent to the combustor for incineration"[5] (Exhibit B).

8.  According to a news report (11/18/21) by Bloomberg news: "MDC even got the rare attention of the railroad commission. The company racked up 10 violation notices in **Reeves County** for flaring without a permit, according to the commission. That made it the recipient of 45% of all such notices in the county since the start of last year. During one inspection, MDC was found to be venting 800,000 cubic feet of gas into the air on a single day." (Exhibit C)[6]

9.  The defunct  MDC Et Al management knowingly (fraudulently) VIOLATED many environmental laws of the State of Texas and of the United States.

10.  Exhibit D is the picture of the gas flare and vent on my land.

11.  The defendants   Siffin Et Al knowingly and without any due regards to its outcome, continuously flared gas in the air from

[4] MCFD=1000 cubic feet per day
[5] See report by nonprofit group Earthworks-Page 16 (Exhibit C). For the full report, please click on the link here. www.earthworks.org/texasflaring
[6] Source:https://www.bloomberg.com/news/features/2021-11-18/as-oil-drilling-picks-up-after-a-post-pandemic-lull-this-company-s-foray-in-the?leadSource=uverify%20wall

3

my property and created environmental hazards. I believe that is the violation of my rights under 14th amendment as well as 5th amendment of the US Constitution.

## CONCLUSION

Your Honor, please allow me to join this action as a (cross) plaintiff. The defendants here have knowingly flared unpermitted gas on my face for almost 2 years. On one hand, Mr. Siffin Et Al were transferring millions of dollars of debtor's money(ill gotten gains) to their personal bank accounts-while  installing illegal gas flaring equipment on my land. Throughout the bankruptcy proceedings,  Mr. Siffin et al flared unpermitted methane and hydrogen sulfide gas. The preponderance of evidence is available to prove these facts. This was unconscionable.  While in bankruptcy- Mr. Siffin Et Al erected and burned/flared- without permission from the bankruptcy Court or any regulatory authority- multiple gas flares in Reeves County and created a climate debacle and an environmental disaster. That is fraud. It is fraud upon the court.

I file this joinder as a plaintiff under Fed Rule 20 or any other permissive rule or law. Please help.  I am a pro se[7] and real aggravated party here,  I request the Court to provide me  all equitable and just relief.

Respectfully Submitted,

Peter I. Shah                                    Date: November 12th 2022

---

[7] Haines v. Kerner, 404 US 519, 520-21(1972); "The obligation to liberally construe a pro se litigant's pleading is well-established."

4

**VERIFICATION**

STATE OF NEW JERSEY

COUNTY OF SOMERSET

Before me, a Notary Public, the foregoing instrument was sworn to, affirmed, subscribed and acknowledged by means of physical presence on this 11/12/2022 by Peter I. Shah, personally known to me.

Notary Public

Kristen Reese

KRISTEN REESE
NOTARY PUBLIC OF NEW JERSEY
Commission # 50106831
My Commission Expires 6/12/2024

5

Certificate of Service

By EFiling to all.

On 11/12/2022, I sent Joinder to following via email:

Mr. Robert R. Bell, Esq.          Email:   rbell@baileyglasser.com

Mr. Andrew K. Glenn, Esq          Email:  aglenn@glennagre.com

Also via Priority Mail with Confirmation to following:

Brian A. Glasser, Esq
Bailey & Glasser, LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007

Marissa E. Miller, Esq
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036

Peter Shah

# EXHIBIT   A

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 19-12269 (CSS) |
| MTE Holdings, LLC, *et al.* | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | **Related D.I. 653** |

<u>**MEMORANDUM ORDER**</u>

Before the Court is *Peter I. Shah's Motion for Allowance and Immediate Payment of Administrative Claim Pursuant to 11 U.S. Code § 503* (D.I. 653; filed on February 25, 2020) (the "Motion"); the Debtors' objection to the Motion (D.I. 802; filed on March, 24, 2020) (the "Objection"); and the Court having heard argument and statements of counsel by the parties on May 4, 2020;[1] and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and finding that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court has the judicial power to enter a final order; the Court hereby finds that:

**BACKGROUND**

1.     On October 22, 2019, Debtor MTE Holdings LLC filed a voluntary petition of relief under chapter 11 of the Bankruptcy Code in this court.  Subsequently on October 23, 2019, Debtors Olam Energy Resources I LLC and MTE Partners LLC filed voluntary

---

[1] *See* Transcript of Hrg. May 4, 2020 (D.I. 1076).

petitions for relief under chapter 11.  The remaining debtors, including MDC Energy LLC ("MDC"), filed chapter 11 petitions on November 8, 2019 (the "Petition Date").

### A. Procedural History between the Parties

2.      Pursuant to certain lease agreements, MDC leases the mineral rights, such as those for oil and gas interests, beneath the surface of land owned by Mr. Peter Shah. In accordance with its rights as lessee, MDC advised Mr. Shah in July 2019 that it would require access to Mr. Shah's property to, among other things, build a tank battery (the "Tank Battery") in support of its oil and gas drilling activities.

3.      In response to MDC's notice, Mr. Shah asserted that MDC has no right of access to his property and sought exorbitant payments to consent to MDC's exercise of its rights.  To resolve the dispute, MDC offered Mr. Shah $30,000. Mr. Shah rejected the offer.

4.      On February 11, 2020, Mr. Shah sent the Letter to the Court, accusing MDC of attempting to strong-arm him and demanding an emergency injunction to prevent MDC from entering onto and operating on his property. He also attached correspondence detailing the settlement negotiations with MDC and including his damages claim.

5.      On February 18, 2020, the Court held a telephonic hearing on Mr. Shah's request for an immediate injunction to prevent MDC from entering his property.  The Court explained that sending the Letter to chambers was not the proper procedure for requesting a temporary or preliminary injunction and also explained that Mr. Shah could

choose to file an administrative expense claim for damages resulting from the installation of the Tank Battery.

6.   On February 25, 2020, Mr. Shah filed the Motion[2] for an administrative claim of $50,000 (the "Claim").

7.   MDC has installed the Tank Battery on Mr. Shah's acreage, but no settlement has been reached regarding a payment for potential damages.

### B. Factual History

8.   In the Motion, Mr. Shah represents that he is owner of the real property, lots 31, 32, 33, and 24, Section 8, Block C-18 in Reeves County, Texas (Property ID 15281) (the "Property"). Mr. Shah seeks an administrative expense claim in the amount of $50,000 for post-petition surface entry(ies), surface damages, certain construction and other such activities performed by MDC. Mr. Shah further explains that on or around November 1, 2019, the Debtor entered the Property to perform some preliminary survey work and site preparation to build a pad for tank battery construction and installation. Mr. Shah further explains in the Motion that the administrative claim is for post-petition damages, services, site work, entries, exists, and electricity access, as well as other services provided to the Debtor by Mr. Shah. Mr. Shah attached to the Motion an email between himself and MDC (the "Surface Use Agreement"), dated November 10, 2019.

---

[2] D.I. 653.

# ANALYSIS

## A.    Administrative Expense Claim

9.     Section 503(b) of the Bankruptcy Code provides administrative expense status for the actual and necessary expenses of a creditor whose efforts preserve a debtor's estate. Delaware courts use the following two-prong test to evaluate a potential administrative claim: "the expense must have arisen from a post-petition transaction between the creditor and the debtor, and the transaction must have been 'actual and necessary' to preserve the estate."[3]

10.    Mr. Shah, as the claimant, has the burden of establishing that his claim qualifies for administrative expense status.[4]

11.    MDC is the mineral lessee to the property owned by Mr. Shah.  In Texas, "[i]t is clear that the right to minerals in place carries with it the rights to enter and extract them and all other incidents thereto as are necessary to the enjoyment of those rights. In other words, the lessee of a mineral lease has the right to use as much of the premises in such a manner as is reasonably necessary to effectuate the purpose of the lease."[5]

---

[3]  *See In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) (*citing Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995); *Gen. Am. Transp. Corp. v. Martin (Mid Region Petroleum, Inc.)*, 1 F.3d at 1130, 1133 (10th Cir. 1993); *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976); *In re Mid–American Waste*, 228 B.R. 816, 821 (Bankr. D. Del. 1999); *In re Molnar Bros.*, 200 B.R. 555, 559 & n.3 (Bankr. D.N.J. 1996); *In re Chateaugay Corp.*, 102 B.R. 335, 353 (Bankr. S.D.N.Y. 1989)).

[4]   *See In re NE Opco, Inc.*, 501 B.R. 233, 241 (Bankr. D. Del. 2013) ("[The claimant] bears the burden of establishing that its claim qualifies for administrative priority status." (*citing In re Goody's Family Clothing Inc.*, 401 B.R. 131, 136 (Bankr. D. Del. 2009); *In re Insilco Techs., Inc.*, 309 B.R. 111, 114 (Bankr. D. Del. 2004); *Unidigital*, 262 B.R. at 288)).

[5]   *Davis v. Devon Energy Prod. Co., L.P.*, 136 S.W.3d 419, 423 (Tex. App. 2004) (*citing Tarrant County Water Control & Improvement Dist. v. Haupt*, 854 S.W.2d 909, 911 (Tex.1993)). *See also Gulf Oil Corp. v. Walton*, 317 S.W.2d 260, 263–64 (Tex. Civ. App. 1958) (finding that "the holder of the mineral estate has the right to put his wells where he wants to, and that does not mean that he shall forced to use or try to utilize abandoned

Furthermore, "only when the conduct of the lessee destroys or substantially impairs the surface owner's use of the surface does the question arise as to whether that conduct is reasonably necessary."[6]

> The Texas courts do speak of a restriction upon the lessee to that use of the surface as is "reasonably necessary," but that is simply a limit on the manner in which the mineral operation is done, and it does not limit the right of the lessee to develop and extract minerals in accordance with the lease. This right carries with it the legal privilege to use the surface of the land and to interfere with the surface owner's use of it. The surface estate is servient in this respect to the dominant mineral estate.[7]

12.     Mr. Shah argues that MDC entered his land to perform preliminary survey work and site preparation to build a pad for tank battery construction and installation.[8] Mr. Shah provides no other information regarding damage to his property, unreasonableness of the Debtor's actions, or any evidence or argument regarding the Debtor's actions or destruction of Mr. Shah's property.

13.     Installing a Tank Battery appears to be within MDC's rights to pursuant to the mineral lease.[9]   Texas law requires Mr. Shaw to show that MDC's actions have

---

wells, or that he must drill so close to such abandoned wells that he can utlize all or part of the former drill site. We believe it would be an unwarranted restriction on the rights and privileges held by the holder of the mineral estate, as he is presumed to know from exploration in this section and expert testimony, the best place, or the place in his best judgment, where he wants to drill his well.").

[6] *Davis v. Devon Energy Prod. Co., L.P.*, 136 S.W.3d 419, 424 (Tex. App. 2004).

[7] *Vest v. Exxon Corp.*, 752 F.2d 959, 961 (5th Cir. 1985) (citing *Humble Oil & Refining Co. v. Williams*, 420 S.W.2d 133 (Tex.1967)).

[8] Motion at ¶ 7.

[9] *Gulf Oil Corp. v. Walton*, 317 S.W.2d 260, 263–64 (Tex. Civ. App. 1958) (mineral lessee was able to construct permanent roads across irrigation farm).

substantially interfered with or precluded the existing surface use.[10]  "Sadly for the surface owner, Texas law, which governs in the present case, implies that a mineral lease gives a large measure of deference to the lessee's view of reasonableness."[11] Here, Mr. Shah has failed to show that MDC "substantially interfered with" or "precluded" Mr. Shah's rights by constructing a Tank Battery. Furthermore, Mr. Shah, as the "person who seeks to recover from the lessee for damages to the surface has the burden of alleging and proving either specific acts of negligence or that more of the land was used by the lessee than was reasonably necessary."[12] Here, Mr. Shah offered no such proof and, thus, fails to meet the burden imposed by Texas law, nor has Mr. Shah provided any evidence that such claim constitutes an administrative claims against MDC.

## CONCLUSION

For the reasons set forth above, the Motion is DENIED.

_____
Christopher S. Sontchi
Chief United States Bankruptcy Judge

Dated: June 8, 2020

---

[10] Getty Oil Co. v. Jones, 470 S.W.2d 618, 622 (Tex. 1971) (citation omitted) ("There may be only one manner of use of the surface whereby the minerals can be produced. The lessee has the right to pursue this use, regardless of surface damage.").

[11] *Vest v. Exxon Corp.*, 752 F.2d 959, 960–61 (5th Cir. 1985).

[12] *Humble Oil & Ref. Co. v. Williams*, 420 S.W.2d 133, 134 (Tex. 1967) (citations omitted).

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 19-12269 (CSS) |
| MTE Holdings, LLC, *et al.* | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | **Related D.I. 1114 and 1115** |

## <u>MEMORANDUM ORDER</u>

Before the Court is *Peter I. Shah's Motion Application for Payment of Administrative Claim Pursuant to 11 U.S. Code § 503* (D.I. 1114; filed on May 26, 2020) (the "Motion"); the Debtors' objection to the Motion (D.I. 1313; filed on July 13, 2020) (the "Objection"); and *Peter I. Shah's Motion Application to Allow ECF Filings* (the "ECF Filings Motion") (D.I. 1115; filed on May 26, 2020). This matter is properly before the Court: the Court has jurisdiction, pursuant to 28 U.S.C. §§ 157 and 1334; venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409; this is a "core" proceeding, pursuant to § 157(b)(2); and the Court has the judicial power to enter a final order. The Court, having heard the evidence and the statements by the parties at the hearing duly noticed and held on July 20, 2020;[1] hereby FINDS, ORDERS, and DECREES as follows:

---

[1] *See* Transcript of Hearing held on July 20, 2020 (D.I. 1348).

## BACKGROUND

1.      On October 22, 2019, MTE Holdings LLC filed a voluntary petition of relief under chapter 11 of the Bankruptcy Code in this Court.  On October 23, 2019, Olam Energy Resources I LLC and MTE Partners LLC filed voluntary petitions for relief under chapter 11.  The remaining debtors, including MDC Energy LLC ("MDC"), filed their chapter 11 petitions on November 8, 2019.

### A. Procedural History

2.      Mr. Shah is the owner of real property, lots 31, 32, 33, and 34, Section 8, Block C-18 in Reeves County, Texas (Property ID 15281) (the "Shah Property").

3.      Pursuant to certain lease agreements, MDC leases the mineral rights, such as those for oil and gas interests, beneath the surface of the Shah Property.  In accordance with its rights as lessee, MDC advised Mr. Shah in July 2019 that it would require access to the Shah Property to, among other things, build a tank battery (the "Tank Battery") and a network of pipelines in support of its oil and gas drilling activities.

4.      In response to MDC's notice, Mr. Shah asserted that MDC has no right of access to his property and sought exorbitant payments to consent to MDC's exercise of its rights. To resolve the dispute, MDC offered Mr. Shah $30,000.  Mr. Shah rejected the offer.

5.      On February 11, 2020, Mr. Shah sent a letter to the Court, accusing MDC of attempting to strong-arm him and demanding an emergency injunction to prevent MDC from entering onto and operating on his property (the "Letter").  Mr. Shah attached to the Letter correspondence detailing settlement negotiations with MDC and his damages claim.

6.      On February 18, 2020, the Court held a telephonic hearing on Mr. Shah's request for an immediate injunction to prevent MDC from entering his property.  The Court explained that sending the Letter to chambers was not the proper procedure for requesting a temporary or preliminary injunction and also explained that Mr. Shah could choose to file an administrative expense claim for damages resulting from the installation of the Tank Battery.

7.      On February 25, 2020, Mr. Shah filed his *Motion for Allowance and Immediate Payment of Administrative Claim Pursuant to 11 U.S. Code § 503* (the "Original Motion") seeking an administrative claim of $50,000 for the construction of the Tank Battery.[2]

8.      On March 24, 2020, the Debtors filed their objection to Original Motion.[3]

9.      On March 31, 2020, Mr. Shah filed his first *Brief in Support* of the Original Motion,[4] and on April 27, 2020, Mr. Shah filed his *Additional Brief in Support*.[5]

10.      On May 4, 2020, the Court held a hearing on the relief sought by the Original Motion.[6]

11.      On May 26, 2020, Mr. Shah submitted (1) the Motion seeking an administrative claim of $436,350 for the 145.45 RODs[7] of pipeline constructed on the Shah Property, and (2) the ECF Filings Motion.

---

[2] D.I. 653.

[3] D.I. 802.

[4] D.I. 860.

[5] D.I. 998.

[6] *See* Transcript of Hearing held on May 4, 2020 (D.I. 1076).

[7] 1 ROD = 16.5 Feet.

12.     On June 8, 2020, the Court entered a final order, denying Mr. Shah's Original Motion because Mr. Shah failed to establish that he suffered any cognizable harm under either Texas law or the Bankruptcy Code (the "June 8 Order").[8]

13.     On June 16, 2020, Mr. Shah filed his *Additional Briefing in Support* of the Motion,[9] and on July 13, 2020, the Debtors filed their Objection.

## B. Factual History

14.     Prior to performing construction upon the Shah Property, MDC provided Mr. Shah with a draft Surface Use Agreement dated November 10, 2019.  The Surface Use Agreement itemized MDC's planned construction and specifically included the installation of both the Tank Battery and the pipe network.  Mr. Shah attached the Surface Use Agreement as Exhibit B to this Motion and as Exhibit A to his Original Motion.

15.     In his Original Motion, Mr. Shah sought an administrative claim for postpetition construction of the Tank Battery.  That motion was denied in the June 8 Order.  Now, Mr. Shah seeks an administrative claim for postpetition construction of the pipe network.  Mr. Shah also claims, for the first time in this Motion, that MDC does not have a valid mineral lease to the Shah Property.  Additionally, Mr. Shah seeks to make use of the Court's Electronic Filing System ("ECF System"), pursuant to his ECF Filings Motion.

---

[8] D.I. 1169, at ¶ 13 ("Here, Mr. Shah has failed to show that MDC 'substantially interfered with' or 'precluded' Mr. Shah's rights by constructing a Tank Battery" under the applicable Texas law which "gives a large measure of deference to the lessee's view of reasonableness.") (quoting *Vest v. Exxon Corp.*, 752 F.2d 959, 960–61 (5th Cir. 1985)).

[9] D.I. 1187.

# ANALYSIS

## A. Claim Preclusion (*Res Judicata*)

16.     Claim preclusion is a legal doctrine which provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that [prior] action."[10]  The purpose of claim preclusion is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."[11]  Claim preclusion fulfills its purpose by barring claims which could have been brought in the prior suit.[12]  The doctrine also serves a "vital public interest beyond any individual judge's *ad hoc* determination of the equities in a particular case."[13]  As such, "[t]here is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principles of *res judicata*" when applicable.[14]

17.     Claim preclusion applies where there is "(1) a final judgment on the merits in a prior suit[, (2) involving] the same parties or their privies, and (3) a subsequent suit based on the same cause of action."[15]  "A determination of whether two cases have 'the same

---

[10] *Yellow Pages Photos, Inc. v. Dex Media, Inc. (In re Dex Media, Inc.)*, 595 B.R. 19, 33 (D. Del. 2018) (quoting *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999).

[11] *Id.* (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341–42 (3d Cir. 2016).

[12] *Id.* (quoting *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009).

[13] *D'Agostino v. Appliances Buy Phone, Inc.*, 633 F. App'x 88, 92 (3d Cir. 2015) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)).

[14] *Id.*

[15] *In re Dex Media, Inc.*, 595 B.R. at 33 (quoting *Sims v. Viacom, Inc.*, 544 F. App'x 99, 1010 (3d Cir. 2013).

cause of action' for purposes of claim preclusion '[t]urns on the essential similarity of the underlying events giving rise to the various legal claims' in both actions."[16]

18.    Each of the requirements for claim preclusion are presently before the Court.  First, the Court entered a final judgment on the merits when it issued the June 8 Order denying Mr. Shah's Original Motion.[17]  Second, the same parties involved in Mr. Shah's Original Motion are involved in this Motion, and are involved in the same orientation.  Third, both the Original Motion and this Motion seek administrative claims for postpetition construction on the Shah Property.  Importantly, the Original Motion dealt with the construction of a Tank Battery.  But, as MDC argues, the pipe network is necessary in order to make use of the Tank Battery.  Indeed, the *Schlumberger Oilfield Glossary*, upon which the Fifth Circuit has relied,[18] defines a "tank battery" as "[a] group of tanks that are connected to receive crude oil production from a well or a producing lease," inside of which, "the oil volume is measured and tested before pumping the oil *into a pipeline system*."[19]  Because the pipe network was a necessary, obvious, and foreseeable consequence of the Tank Battery's construction—and one about which Mr. Shah had notice, pursuant to the Surface Use Agreement—its construction clearly turns on

---

[16] *Id.* at 34 (quoting *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999)).

[17] *See* June 8 Order ("and that this Court has the judicial power to enter a *final order*[.]") (emphasis added).

[18] *See Zenergy, Inc. v. Performance Drilling Co.*, 603 F. App'x 289, 291–92 (5th Cir. 2015) (relying in footnotes 1 and 2 on the *Schlumberger Oilfield Glossary* to define the terms "operator" and "contractor"); *U.S. v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 500 (5th Cir. 2014) (Jones, J., dissenting) (citing in footnotes 3 and 4 of the dissent to the *Schlumberger Oilfield Glossary* to define the terms "casing" and "wellhead").

[19] *Schlumberger Oilfield Glossary*, https://www.glossary.oilfield.slb.com/en/Terms/t/tank_battery.aspx (Last visited July 22, 2020) (emphasis added).

essentially similar events to those which gave rise to Mr. Shah's Original Motion. As such, the elements of claim preclusion are clearly met. Thus, the Court must deny Mr. Shah's Motion.

### B. Issue Preclusion (Collateral Estoppel)

19.     Related to the concept of claim preclusion is issue preclusion, which "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or different claim."[20] The purpose of issue preclusion is to "reduce the costs of multiple lawsuits, facilitate[ ] judicial consistency, conserve[ ] judicial resources, and encourage[ ] reliance on adjudication."[21]

20.     Issue preclusion applies where "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) there was a valid and final judgment; and (4) the determination was essential to the prior judgment."[22]

21.     Each element of issue preclusion is likewise presently before the Court. First, in this Motion, as in the Original Motion, the issue is whether Mr. Shah is entitled to an administrative expense claim for postpetition surface entries, damages, construction, and other activities performed by MDC under its lease. Second, the above issue was actually

---

[20] *In re AmeriServe Food Distribution, Inc.*, 315 B.R. 24, 35 (Bankr. D. Del. 2004).

[21] *Dici v. Com. Of Pa.*, 91 F.3d 542, 547 (3d Cir. 1996) (internal quotations omitted).

[22] *In re Selheimer & Co.*, 319 B.R. 395, 402 (Bankr. E.D. Pa. 2005) (citing *National Railroad Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir.2002)).

litigated on May 4, 2020. Third, and as mentioned above, the June 8 Order provides final judgment denying Mr. Shah's Original Motion. Fourth, the Court's determination that Mr. Shah failed to satisfy his burden under Texas law was essential in the June 8 Order because it was fully dispositive. Furthermore, the Court has already acknowledged in the June 8 Order that MDC is the mineral lessee to the Shah Property.[23] Thus, Mr. Shah's instant claim is collaterally estopped.[24]

### C. ECF Filings Motion

22.     Mr. Shah also moves for the opportunity to file documents on the Court's ECF System. In support of his ECF Filings Motion, Mr. Shah relies on an April 1, 2020 statement made by the United States District Court for the District of New Jersey regarding its ECF procedure for *pro se* litigants in light of COVID-19. But this Court is not that court and that statement does not provide for ECF accounts for *pro se* filers. Rather, it established an email address to which filings may be sent. Here, the Court's Administrative Procedures for Electronically Filed Cases (the "ECF Procedures") clearly state that non-attorneys "shall be entitled to an ECF system password to permit the filing of a limited scope of documents such as *Reaffirmation Agreements* and *Requests for Service Notices*."[25] Mr. Shah is a *pro se* litigant and a non-attorney. As such, he is not entitled to

---

[23] June 8 Order, at ¶ 11.

[24] Nonetheless, the Court notes the utmost respect to the Court exercised by Mr. Shah throughout these proceedings.

[25] United States Bankruptcy Court for the District of Delaware, Administrative Procedures for Electronically Filed Cases, https://www.deb.uscourts.gov/sites/default/files/clerks-office-procedures/administrative%20procedures%20for%20electronically%20filed%20cases.pdf (Last visited July 21, 2020) (procedure 2.B "Registration").

file the documents he wishes to file via the ECF System.  Nonetheless, the Clerk of Court

will provide Mr. Shah with an email address to which he can send future filings.

## CONCLUSION

For the reasons set forth above, both the Motion and the ECF Filings Motion are

DENIED.


_____
Christopher S. Sontchi
Chief United States Bankruptcy Judge

Dated: July 30, 2020

# EXHIBIT   B

## SEATTLE SLEW—14 SITE VISITS WITHOUT A PERMIT

Despite the RRC's claims that flaring should be used only in an emergency and as a last resort,[31] operators clearly do not view it as such. One particularly noteworthy example of this is MDC Texas Operator's Seattle Slew site in the Permian Basin. This site was approved for a permit to drill in 2016. Since that time Earthworks has visited the site fourteen times with an optical gas imaging camera that makes visible normally invisible air pollution.[32] We detected pollution all fourteen times — most notably improperly flaring nine times within the past year. **MDC has never had a permit from the RRC to flare at the site in its entire history of operation.**

In order to address the pollution, Earthworks filed several complaints with the Texas Commission on Environmental Quality (TCEQ). Despite footage of emissions on fourteen separate occasions, the TCEQ failed to issue any violations. In order to understand how that was possible, Earthworks requested investigations and correspondence between MDC and TCEQ through a public information request (PIR). That PIR returned correspondence between MDC and TCEQ including emails in which TCEQ asked MDC for an estimate of emissions released from their tanks

during one of the videos Earthworks submitted.

MDC responded that they could not provide that information, saying: *There is no way to estimate how much gas was vented as we don't measure our tank gas MCFD since it isn't sold to gas sales but instead sent to the combustor for incineration. Also, we don't know for how long (hrs.) this gas was vented to the atmosphere.*

This response indicates RRC and TCEQ oversight is significantly lacking. It also seems to indicate that MDC is not metering the gas going up their combustor (flare). If operators do not meter the gas going through their flare stacks, how can the RRC enforce their flaring volume limits? This undermines the credibility of any data RRC presents on flaring **How can the RRC enforce flaring volume limits if they are not metering the flare?** or methane volumes, and further may explain the proliferation of unpermitted flares. If operators are not obligated to meter their flare stacks, then the RRC has no way to verify when gas is sent to be flared and how much other than through the word of the operators.



**MDC SEATTLE SLEW NEVER HAD A FLARING PERMIT**

Earthworks visited the site 14 times since 2016, each time detecting pollution with the OGI camera.

FLARING IN TEXAS—A COMPREHENSIVE GOVERNMENT FAILURE
*What the Texas Railroad Commission fails to track, it can't govern*
earthworks.org/texasflaring

EARTHWORKS

16

# EXHIBIT   C

**Source:**
https://www.bloomberg.com/news/features/2021-11-18/as-oil-drilling-picks-up-after-a-post-pandemic-lull-this-company-s-foray-in-the?leadSource=uverify%20wall

**An Oil Company Went Up in Flames, Burning Lenders and the Planet**

Mark Siffin's foray into the Permian Basin leaves behind financial and environmental wreckage that outlasts his presence in West Texas.

ByRachel Adams-Heard and Zachary Mider.   November 18, 2021 at 5:00 AM EST

The orange flames dotting Siffin's empire illuminate the dark side of the Permian fracking boom. When times were good, the money flowed. New oil companies, buoyed by private equity and cheap debt, emerged at an astonishing clip. They drilled wells that brought forth a surge of cheap natural gas—and with it pollution. Burning excess gas requires permission from the state, and in Texas it's rarely denied. But in Reeves County, home to most of Siffin's wells, MDC racked up more noncompliance notices for flaring without a permit than any other company. Despite those, and a handful of other state violations, MDC was never made to pay a single fine…..

November 2019, the same month MDC filed for bankruptcy, the company's flaring doubled from the previous month, according to production reports filed with the state, while its gas output grew just 1.4%. By the end of that year, MDC was flaring more than 12% of all the natural gas it produced. That rate continued in 2020, making MDC the second-worst Permian operator for flaring in a list of 45 companies compiled by consulting firm Rystad Energy……

Data derived from satellite imagery show that MDC's flaring may have been even greater—roughly twice as much in 2020 as what it reported to regulators, according to Bloomberg News analysis of data from the Earth Observation Group at the Colorado School of Mines. At that rate, MDC would have been burning off about a quarter of all the gas it produced……

Flaring is meant to convert methane into carbon dioxide, in part because methane is at least 80 times more potent when first released into the

atmosphere. But studies have shown that lots of methane still makes it through. The Environmental Defense Fund estimates that about 93% of the methane flared in the Permian is burned off, while the rest is released into the atmosphere. At that rate, the flaring MDC reported in 2020 would have the same climate impact as having 98,301 cars on the road for a year, with unburned methane the biggest contributor. The difference is that flared gas is entirely wasted energy, creating pollution without any benefit like heating homes……

MDC was in a unique predicament. It couldn't afford to treat the gas to ship it via pipeline. It also couldn't afford to stop producing oil, a company employee explained in a filing with the state. "At this time, to completely shut the wells in would be detrimental to operations for all stakeholders involved," Brandon Wilson, a regulatory analyst for MDC, wrote in October 2020……

Former field workers for the company say their hands were tied as soon as the bankruptcy proceeding started. One engineer, who asked not to be named because he still works in the industry, said he and his team approached executives with concerns about the effectiveness of MDC's flares. They were worried that methane and other pollution wasn't getting fully burned off. But, he said, little was done about it……

In September 2020, as MDC's bankruptcy case headed into its second year, an environmentalist with the nonprofit group Earthworks was on one of her usual patrols of the Permian. Sharon Wilson uses an infrared camera to spot methane plumes normally invisible to the human eye, acting as a sort of detective for emissions that frequently escape from oil-field operations without anyone noticing. When she came across MDC's American Pharoah lease, which shares a misspelled name with the Triple Crown winner, her viewfinder showed pollution spewing from an unlit flare and out of a nearby tank….

A few days later, Wilson saw a similar scene at MDC's Pick Pocket 21 location. This was particularly concerning because Wilson had been there before. During several visits since the previous November, she had spotted emissions escaping from a blown valve and venting from a tank…

Wilson compiled her findings in a YouTube video and filed a formal complaint with the Texas Commission on Environmental Quality, as she

usually does. She had already filed four others related to the Pick Pocket 21 lease, she wrote in a letter calling on regulators to act on the "continuous intense and significant" emissions. "The gas was just blasting out of the flare with tremendous force, and the tanks, every one of them was venting," Wilson said of one particularly bad visit. "There was egregious pollution, whether it was coming from the flare or the tanks. The tanks were always emitting. Always."

The Texas Railroad Commission, the state's chief energy regulator, is charged with permitting oil and gas wells and granting the exemption requests that allow operators to flare. The TCEQ distributes air and water permits necessary for oil and gas operations and tends to step in when something goes wrong at a site. Neither agency regulates methane emissions. In many cases, oil drillers and pipeline operators release unburned gas without breaking any state or federal rules….

The TCEQ opened an investigation into the tank Wilson found venting gas on the American Pharoah lease. But it had nothing to do with methane. Instead, the agency dinged MDC for operating the facility for two years without a permit. In February, the TCEQ proposed enforcement actions for violations at three other MDC sites, including the Pick Pocket 21 lease, and assessed penalties that came to $17,500.


MDC even got the rare attention of the railroad commission. The company racked up 10 violation notices in Reeves County for flaring without a permit, according to the commission. That made it the recipient of 45% of all such notices in the county since the start of last year. During one inspection, MDC was found to be venting 800,000 cubic feet of gas into the air on a single day….

Even with its violations, MDC wasn't fined by either agency. In a statement, the Texas Railroad Commission said the company corrected its violations prior to legal enforcement actions. **The TCEQ cited the company's bankruptcy as the reason "there is no payable amount due."**

# EXHIBIT   D

